# United States Court of Appeals
## For the First Circuit

No. 02-1060

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN PEREZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin and Cyr, Senior Circuit Judges.

Michael J. Iacopino and Brennan, Caron, Lenehan & Iacopino on brief for appellant.
Thomas P. Colantuono, United States Attorney, and Mark E. Howard, Assistant United States Attorney, on brief for appellee.

August 7, 2002

**SELYA**, <u>Circuit Judge</u>. This appeal raises an interesting question about a defendant's entitlement to a "missing witness" instruction with respect to a confidential informant (CI) whose testimony the government elected not to present at trial. We uphold the district court's refusal to give the requested instruction, and, consequently, affirm the judgment of conviction.

This case has its roots in an investigation that targeted two suspected drug dealers, "Tony" and "Taboo." The lead investigator was Trooper Paul Hardcastle, a member of the New Jersey State Police, working undercover in New Hampshire. On January 11 — all dates are in the year 2000 — Hardcastle met the CI at a parking lot in Salem, New Hampshire. He entered a number on his cellular telephone and then handed the telephone to the CI with instructions to arrange a purchase of crack cocaine. The CI obliged. The number that Hardcastle called was listed to the residence of defendant-appellant Juan Perez.

Shortly thereafter, the appellant arrived in the parking lot behind the wheel of a motor vehicle. Hardcastle and the CI approached the car and gave the appellant $300. A passenger in the car, later identified as Manuel Guillen, then handed twenty packets of crack cocaine to Hardcastle.[1]

---

[1]The government's evidence at trial indicated that Perez and Guillen were "Tony" and "Taboo."

On January 19, Hardcastle and the CI initiated a second transaction in much the same manner. The appellant again arrived at the parking lot in response to the CI's call. When Hardcastle asked the appellant for larger quantities of crack cocaine, the appellant directed him to a second vehicle, occupied by José Antonio Garcia. This vehicle was registered to the appellant.

Hardcastle planned the coup de grace to occur on March 8. He provided "buy money" to the CI, who proceeded to the same parking lot under the watchful eyes of a police surveillance team. The CI purchased crack cocaine from one Dione Bare. Hardcastle then recognized Garcia in the rear seat of another vehicle in the parking lot. The police arrested the occupants of that vehicle (namely, Garcia, Guillen, and the appellant).

The grand jury indicted the appellant on one count of conspiracy to possess controlled substances with intent to distribute and four counts of distribution on specific dates. See 21 U.S.C. §§ 841(a)(1), 846. The government later dropped one of the distribution counts. At the ensuing trial, Hardcastle was the only witness to identify the appellant as a first-hand participant in the January 11 and January 19 transactions. The appellant challenged this identification evidence, contending that Hardcastle had made a mistake. The CI was not called to testify.

At the close of the evidence, the appellant's request for a missing witness instruction relating to the CI was denied. The

judge charged the jury, and the appellant properly preserved his rights. See Fed. R. Crim. P. 30. The jurors found the appellant guilty on the four remaining counts. The district court imposed a ten-year incarcerative sentence. This appeal followed.

In this venue, the appellant assigns error to the trial court's refusal to give the sought-after missing witness instruction. He argues that the CI's testimony was essential to a fair determination of the central issue in the case: the identity of the person with whom Hardcastle dealt on January 11 and January 19. We reject this argument.

The rationale behind a missing witness instruction is that upon "the failure of a party to produce available evidence that would help decide an issue," the jury may infer "that the evidence would [have been] unfavorable to the party to whom it is available or whom it would ordinarily be expected to favor." United States v. St. Michael's Credit Union, 880 F.2d 579, 597 (1st Cir. 1989) (citation omitted); accord United States v. Ariza-Ibarra, 651 F.2d 2, 15-16 (1st Cir. 1981). If other conditions are met, a missing witness instruction is proper when a witness is either actually unavailable to the party seeking the instruction or so obviously partial to the other side that the witness is deemed to be legally unavailable. See United States v. Spinosa, 982 F.2d 620, 632 (1st Cir. 1992). Thus, as a preliminary requirement to the consideration of a missing witness instruction, a criminal

defendant must demonstrate that the uncalled witness is either "favorably disposed" to testify on behalf of the government by virtue of status or relationship or "peculiarly available" to the government. United States v. DeLuca, 137 F.3d 24, 38 (1st Cir. 1998). Once past that point, the court must consider the explanation (if any) for the witness's absence and whether the witness, if called, would be likely to provide relevant, non-cumulative testimony. United States v. Lewis, 40 F.3d 1325, 1336 (1st Cir. 1994). The decision to grant or deny such an instruction in a specific case is reviewed for abuse of discretion. DeLuca, 137 F.3d at 38; Lewis, 40 F.3d at 1336.

Here, the appellant asseverates that the trial court abused its discretion in refusing to give a missing witness instruction vis-à-vis the CI. This asseveration lacks force.

Federal courts long have recognized that the government, in the due performance of its law enforcement functions, must rely to some extent on informants. But tattling on criminals is risky business, and confidentiality sometimes is a matter of life or death. Identifying an informant (as, say, by calling him to the witness stand) not only may expose that person to harm but also may be seen as a breach of trust by others (making them reluctant to cooperate with the government in future cases). It is, therefore, widely acknowledged that the government has a "privilege to withhold from disclosure the identity of persons who furnish

-5-

information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957).

To be sure, this privilege is qualified, not absolute. There are circumstances in which the interests of justice require that the privilege yield in order to preserve the accused's right to a fair trial. See id. at 60-61. But the privilege serves important ends, and the law places the burden squarely on the party seeking disclosure (typically, the defendant) to demonstrate that knowledge of the identity of a confidential informant is vital to the proper preparation and presentation of his case. See, e.g., Lewis, 40 F.3d at 1335; United States v. Giry, 818 F.2d 120, 130 (1st Cir. 1987).

This inquiry defies mechanical solutions: in determining whether the privilege must give way, the trial court must consider the particular circumstances of each case, balancing the accused's right to prepare and present his defense against the public interest in acquiring needed information and the informant's stake in confidentiality. United States v. Robinson, 144 F.3d 104, 106 (1st Cir. 1998). The battle over entitlement to the privilege typically is fought out in motion practice and other pretrial proceedings (including evidentiary hearings, where warranted). E.g., id. at 105-06; United States v. Bibbey, 735 F.2d 619, 621 (1st Cir. 1984). In recognition of the seminal case on the

informant's privilege, pretrial evidentiary hearings devoted to this issue have come to be known as "Roviaro hearings."

In the instant case, the appellant eschewed the filing of a motion for disclosure of the CI's identity. He likewise chose not to ask the trial court to convene a Roviaro hearing. Instead, he attempted an end run around the safeguards that attend the qualified privilege: he waited until both sides had rested and then, despite having made no effort to obtain the informant's identity in the usual manner, implored the court to instruct the jurors that they could draw an adverse inference from the government's failure to offer the CI's testimony. Under these circumstances, we agree with the district court that the appellant was not entitled to such an instruction.

The appellant argues that there is no strict requirement that he file a motion requesting disclosure of an informant's identity. That may be so, but it is beside the pertinent point. If a defendant moves for disclosure, and loses, then he is not entitled to a missing witness instruction. A defendant who elects not to contest the matter at all hardly can be more advantaged. In all events, a negative inference is unwarranted as a matter of logic. The fact that the government chose to withhold the identity of its informant does not, in and of itself, justify an adverse inference, for "there is no basis for concluding that the government's decision not to reveal the identity of its

confidential informant was the result of any consideration other than its concern for the informant's safety and anonymity." United States v. Martinez, 922 F.2d 914, 925 (1st Cir. 1991).

The sockdolager is that to grant the appellant the instruction that he seeks would undermine the Roviaro privilege — and without good reason. At whatever stage of the proceedings the question arises, the accused has the burden to show that something special about his case suffices to override both the public interest in encouraging the flow of information to law enforcement agencies and the source's private interest in his or her own safety. See Martinez, 922 F.2d at 920-21; United States v. Hemmer, 729 F.2d 10, 15 (1st Cir. 1984). A defendant cannot evade this responsibility by the simple expedient of lying low until both sides have rested, and then attempting to treat the informant as a person whose identity ought to have been revealed.

Viewed in this light, the appellant's argument necessarily fails. After all, he did not make the showing required to overcome the Roviaro privilege (indeed, he did not even attempt to make it). Since an inference unfavorable to the government cannot arise simply because the government decides not to call a confidential informant to testify, the district court did not abuse its discretion in refusing to give the requested jury instruction.

If more were needed — and we do not think that it is — we remark that the appellant was permitted, in his summation, to argue

-8-

that the jury should draw a negative inference from the government's failure to bring forward the CI.  Defense counsel hammered this point home, the prosecutor did not object, and the court gave no curative instruction.  This is reminiscent of the situation in Martinez, in which we wrote:

> We note here counsel was permitted, without objection by the government or instruction by the court, to argue to the jury that it should draw a negative inference from the government's failure to produce its confidential informant.  Particularly under these circumstances, we have found that any claim that the denial of a "missing witness" instruction was detrimental to the defense is significantly undercut.

922 F.2d at 925 (citation omitted); see also Ariza-Ibarra, 651 F.2d at 16 n.22 (explaining that the fact that the defendants argued, without objection or contrary instruction by the court, that the jury should draw a negative inference from the government's failure to call a witness "materially undercuts [their] argument that the denial of a missing witness instruction deprived them of an inference favorable to the defense").  So it is here.

We need go no further.[2]  We hold that where, as here, a criminal defendant does not attempt to pierce the Roviaro privilege, a missing witness instruction as to a confidential

_____

[2]The district court offered a salmagundi of other reasons for denying the missing witness instruction (e.g., that the appellant's counsel was engaging in "gamesmanship" and that, in all events, the CI's testimony would have been cumulative).  We need not reach these issues.

informant is improper.  For that reason, the district court did not abuse its discretion in denying the appellant's request for such an instruction.

**<u>Affirmed</u>**.