# United States Court of Appeals
## For the First Circuit

No. 08-1498

LATIN AMERICAN MUSIC COMPANY, d/b/a Asociación de Compositores y
Editores de Música Latinoamericana (ACEMLA); ASOCIACIÓN DE
COMPOSITORES Y EDITORES DE MÚSICA LATINOAMERICANA (ACEMLA),

Plaintiffs, Appellants,

v.

AMERICAN SOCIETY OF COMPOSERS AUTHORS AND PUBLISHERS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Baldock[*] and Howard,
Circuit Judges.

Mauricio Hernandez Arroyo, with whom the Law Offices of
Mauricio Hernandez Arroyo, was on brief, for appellants.
Richard H. Reimer, with whom Diego A. Ramos, Fiddler Gonzáles
& Rodriguez, PSC, Stephen S. Young, and Holland & Knight LLP, were
on brief, for appellee.

January 29, 2010

[*]Of the Tenth Circuit, sitting by designation.

**HOWARD**, <u>**Circuit Judge**</u>.  This dispute involves rights to a single song, "Caballo Viejo."[1]  The appellants are the Latin American Music Company ("LAMCO") and the Asociación de Compositores y Editores de Música Latino Americana ("ACEMLA").[2]  The appellee is the American Society of Composers, Authors, and Publishers ("ASCAP").  After a trial, a jury found that the rights belonged to ASCAP.  This determination turned on an implicit finding that ASCAP's predecessor in interest West Side Music Publishing, Inc. ("West Side"), lawfully terminated a 1982 contract that had previously transferred West Side's rights in Caballo Viejo to the appellants.

The appellants' primary argument is that the jury was improperly instructed about the manner in which the 1982 contract could be terminated.  The appellants also take issue with an additional jury instruction, with the verdict form, and with comments made by ASCAP's attorney during closing argument.[3]  We affirm.

---

[1] Caballo Viejo translates into "Old Horse."  The song was composed by Simón Díaz and is a popular folk song in Venezuela.

[2] The two appellants in this case, LAMCO, a music publisher based in New York, and ACEMLA, a performance rights society based in Puerto Rico, are affiliated with one another and their interests are aligned in this case.  Thus, we will sometimes refer to the appellants singularly as "LAMCO."

[3] An additional claim on appeal, based on a correction to the judgment, is without any record support and warrants no discussion.

# I. Facts

We provide only the essential facts here.[4]  In September 1981, Simón Díaz, the composer of Caballo Viejo, granted rights to the song to a predecessor of West Side.  West Side, in turn, through a 1982 contract "transferred and ceded" an exclusive license to ACEMLA, LAMCO's predecessor in interest.  The 1982 contract between West Side and ACEMLA, which was formed in New York, was silent with respect to termination.  It did not specify a termination date, the conditions under which the exclusive license could be terminated, or the manner in which the license could be terminated.

In 1996, this lack of clarity became a sticking point, as a dispute arose over the copyright.  LAMCO filed an action in federal court claiming, among other things, that it owned a copyright in Caballo Viejo under the 1982 contract.  ASCAP, which was eventually brought into the case as a defendant, demurred and claimed that it held the copyright, because its predecessor in interest West Side[5] had lawfully terminated the 1982 contract.

---

[4] Those interested in the background of this case may consult our previous decision in Latin Am. Music Co. v. Archdiocese, 499 F.3d 32 (1st Cir. 2007).  In that decision, we vacated a grant of summary judgment in favor of ASCAP on the ownership of Caballo Viejo, holding that a material question of fact existed.  Id. at 38-40.

[5] West Side effectively became a part of ASCAP in 1993.

After a remand from this court, see Latin Am. Music Co., 499 F.3d at 38-40, the case proceeded to trial.

At trial, the only evidence that was presented about termination was the videotaped deposition of West Side's president, Hector Varona. In his deposition, Varona testified that he had verbally terminated the 1982 agreement with ACEMLA. He testified that the verbal termination occurred during a conversation that he had with the president of ACEMLA, Raul Bernard.[6]

At the close of the evidence, the parties disagreed over whether the court should instruct the jury that Varona's purported termination of the 1982 contract had to be in writing. LAMCO argued that the federal Copyright Act governed termination of the agreement and that any notice of termination therefore had to be in writing. It further argued that, even if New York state law rather than the Copyright Act governed the termination, the notice of termination still had to be in writing. For its part, ASCAP argued that New York law governed termination and that, under New York law, a contract of an unspecified duration could be terminated upon reasonable notice. In ASCAP's view, whether Varona's verbal communication constituted "reasonable notice" was a question for the jury.

---

[6] Bernard is the chief executive officer, director, and majority stockholder of both ACEMLA and LAMCO.

The district court ultimately agreed with ASCAP, instructing the jury as follows:

> In order for ASCAP to prevail on its declaration of legal rights claim, ASCAP must prove by a preponderance of the evidence that the agreements between West Side Music and LAMCO parties had either expired by their own terms or were terminated by Hector Varona before January 1st, 1992, so that ASCAP and not LAMCO had the rights to license public performances of Caballo Viejo after January the 1st, 1993. And that's where the dispute is. That's what you have to look into.
>
> And how is it that you look into those things? <u>You know, a licensing agreement without a specific term may be ended by one party after a reasonable duration and after reasonable notice is given to the other party</u>.
>
> And there are many things you can consider. Obviously one thing that you can consider is whether the development of the transaction, as such, was made in writing or not. You can also consider what kind of letters the parties exchanged as these things developed to figure out what was the intention of them.
>
> You can also consider the written words of the contracts that they signed. You may also consider the conduct of the parties to ascertain if the actions of one party or the other was consistent with the positions they assumed in reference to the termination of the contract at issue here.
>
> Had it been totally black and white, we probably would not be here obviously. It may be better to make it in black and white, but I don't think that the law requires in the case of a termination of an agreement that it be only in black and white. Better, yes, but not only.

And that's why I say that you have to look at the whole scenario. You have to look at what was it that the parties did, how was it that they reacted to it, what was it that they -- how was it that they conducted themselves in reference to this? And then, out of that, out of that circumstantial evidence, perhaps you can figure out whether indeed it is ASCAP, or it's the other party, the one entitled to the rights of this song Caballo Viejo.

(emphasis added).

When the court finished instructing the jury, LAMCO again objected to the court's termination instruction. Again, LAMCO argued that any notice of termination had to be in writing. The court did not budge and the case went to the jury. The jury found in favor of ASCAP. This appeal ensued.

## II. Discussion

### A. Jury Instructions

LAMCO objects to two instructions given by the district court. We examine each instruction in turn.

### 1. Termination instruction

#### a. Which law governs termination?

LAMCO first argues that the district court erred when it applied New York law, rather than the Copyright Act, when instructing the jury on whether there had been an effective termination of the 1982 contract. We review this claim of instructional error de novo. SEC v. Happ, 392 F.3d 12, 28 (1st Cir. 2004). A jury instruction is erroneous if it is misleading,

confusing, or incorrect as a matter of law. Davignon v. Clemmey, 322 F.3d 1, 9 (1st Cir. 2003).

Ordinarily, unless a contract provides otherwise, it is governed by the law of the state in which it was formed. See U.S. Trust Co. v. New Jersey, 431 U.S. 1, 19 n. 17 (1977); see also Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n, 499 U.S. 117, 130 (1991). Where a contract formed in a particular state is silent with respect to certain terms, state rules of enforcement and interpretation may serve to fill those gaps. See U.S. Trust Co., 431 U.S. at 19 n.17 ("The obligations of a contract long have been regarded as including not only the express terms but also the contemporaneous state law pertaining to interpretation and enforcement."); see also Norfolk & W. Ry. Co., 499 U.S. at 130 ("Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms.") (quoting Farmers and Merchs. Bank of Monroe v. Fed. Reserve Bank of Richmond, 262 U.S. 649, 660 (1923)); Walthal v. Rusk, 172 F.3d 481, 485 (7th Cir. 1999) (explaining that a contract reached in Illinois that was silent as to duration was "terminable at will" under Illinois law).

Here, the contract was formed in New York and is silent with respect to termination. Under New York law, such a contract remains in force for a reasonable time and is subject to

termination upon reasonable notice. <u>Italian & French Wine Co. of Buffalo, Inc.</u> v. <u>Negociants U.S.A., Inc.</u>, 842 F. Supp. 693, 699 (W.D.N.Y. 1993) ("[W]ell-settled New York law [] provides that a contract with no stated duration is terminable only after a reasonable duration and after reasonable notice is given."); <u>see also</u> <u>Laugh Factory, Inc.</u> v. <u>Basciano</u>, 608 F. Supp. 2d 549, 556 (S.D.N.Y. 2009); <u>Rogers</u> v. <u>HSN Direct Joint Venture</u>, 1999 U.S. Dist. LEXIS 12111, at * 3 (S.D.N.Y. Aug. 6, 1999).

LAMCO, however, argues that the Copyright Act preempts this default rule of termination because the Act and the default rule are in conflict. <u>Walthal</u>, 172 F.3d at 485 (explaining, when deciding whether the Copyright Act preempted state law, that "state contract law cannot provide the basis of a decision if that law conflicts with federal law"). LAMCO argues further that, under the Copyright Act, Varona's notice of termination had to be in writing.

We discern no conflict between the federal law and New York law, because we conclude that the sections of the Copyright Act cited by LAMCO are inapplicable in this case. Accordingly, we reject LAMCO's preemption argument.

LAMCO first directs our attention to § 204 of the Copyright Act, applicable to the transfers of copyright ownership. 17 U.S.C. § 204. It provides in relevant part:

Execution of transfers of copyright ownership.

(a) A transfer of copyright ownership, other than by operation of law, is not valid unless

-8-

> an instrument of conveyance, or a note or
> memorandum of the transfer, is in writing and
> signed by the owner of the rights conveyed or
> such owner's duly authorized agent.

Id. § 204 (a).

LAMCO suggests that this section is applicable to the alleged termination of rights at issue in this case. The logic is as follows. West Side transferred an exclusive license to ACEMLA through the 1982 contract. Upon West Side's termination of that contract, ownership of the copyright would be transferred from ACEMLA back to West Side. Because the effect of the contract termination was to transfer copyright ownership, § 204 applied and required a writing to effectuate the transfer. And, because there was no writing, no transfer of ownership interest could have occurred.

Section 204, which requires a writing signed by the transferor, however, applies to the transfer or grant of copyright ownership, not to the termination of such a transfer or grant. LAMCO cites no case suggesting otherwise, nor are we are aware of any such case. Moreover, extending § 204 to the termination of copyright interests would lead to untenable results. A transferee of a copyright interest could effectively veto a lawful termination of that interest by refusing to reconvey that interest to the terminating party under § 204. For example, in this case, LAMCO, the transferee, could have prevented West Side from terminating the

exclusive license by simply choosing not to reconvey the license to West Side through either an instrument of conveyance, or a note or memorandum of transfer.

Next, LAMCO cites § 203, which explicitly deals with termination of transfers and licenses granted by an author. 17 U.S.C. § 203. Under that section, an author, or an author's statutory heirs, may, under certain conditions, terminate an exclusive grant of a license "by serving an advance notice <u>in writing</u> . . . upon the grantee or the grantee's successor in title." <u>Id.</u> § 203 (a)(4) (emphasis added).

That section, however, is also inapplicable. According to its plain language, § 203 only applies where an author or an author's statutory heirs are terminating the grant. <u>Id.</u> § 203 (a)(1)-(2); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 11.03[B], at 11-40.5 (2007) ("Grants executed on or after January 1, 1978 are subject to termination <u>only if executed by the author</u>.") (emphasis added). West Side is neither the author nor a statutory heir of the author. Furthermore, LAMCO does not contend that West Side should be treated as either an author or statutory heir for purposes of § 203. In light of the plain language of § 203, there is no basis to conclude that § 203 applies to this contract.

###### b.  Reasonable notice under New York law

LAMCO also argued below that it was entitled to relief even under New York law.  The contention is that, under the circumstances of this case, only written notice of termination could constitute "reasonable notice" under New York law, and the court should have instructed the jury accordingly.  In support of this argument, LAMCO contended that New York law would require a party who is terminating an exclusive license to comply with § 203's termination provision, whether or not the terminating party is an author or statutory heir.

We need not linger over this argument.  On appeal, LAMCO makes only a passing reference to the argument, fails to cite any authority in support of it, and does not develop the argument in any meaningful way.  As a result, the argument is waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (noting the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

## 2.  Missing witness instruction

Varona, West Side's president, did not testify in person at trial.  Instead, a videotape of his deposition was shown to the jury.  Because Varona did not testify in person, LAMCO asked the district court to give the jury a "missing witness" instruction.  The district court declined the request.  LAMCO claims that this

was in error.  "We review the grant and denial of missing witness instructions for abuse of discretion."  Grajales-Romero v. Am. Airlines, Inc., 194 F.3d 288, 298 (1st Cir. 1999).

Although far more common in criminal cases[7], a missing witness instruction may be given in a civil case as well.  See Grajales-Romero, 194 F.3d at 298.  The instruction informs the jury that a party's failure to produce a particular witness may justify the inference that the witness' testimony would have been unfavorable to that party.  United States v. Lewis, 40 F.3d 1325, 1336 (1st Cir. 1994).  The instruction, however, should only be given where "the witness is either actually unavailable to the party seeking the instruction or so obviously partial to the other side that the witness [though technically available] is deemed to be legally unavailable."  United States v. Perez, 299 F.3d 1, 3 (1st Cir. 2002).  When deciding whether to issue a missing witness instruction the "court must consider the explanation (if any) for the witness's absence and whether the witness, if called, would be likely to provide relevant, non-cumulative testimony."  Id.

Here, the court acted within its discretion in refusing to give the jury a missing witness instruction.  Varona was not missing in the classic sense.  Although he did not testify in

---

[7] In criminal cases, the instructions are typically given against the government.  See, e.g., United States v. Pagan-Santini, 451 F.3d 258, 267 (1st Cir. 2006); United States v. Jimenez, 419 F.3d 34, 44 (1st Cir. 2005).

-12-

person, he testified in a deposition in which he was questioned by LAMCO's counsel.  This deposition was videotaped and shown to the jury.  See Poulin v. Greer, 18 F.3d 979, 983 n.3 (1st Cir. 1994) (noting that, where the witness's deposition testimony was entered into evidence, "we do not believe that the district court abused its discretion in refusing to give a missing witness instruction"); see also Cameo Convalescent Ctr., Inc. v. Senn, 738 F.2d 836, 844 (7th Cir. 1984) (explaining that "the justification for the missing witness instruction diminishes with the availability of the tools of discovery").  Furthermore, Varona's inability to testify in person was explained at trial.  Both parties stipulated that Varona would appear by videotape because he resided outside of the district.  See Perez, 299 F.3d at 3.

## B.  Verdict form

The district court provided the jury with a general verdict form that required it only to find in favor of either ASCAP or LAMCO.  LAMCO claims that this was error and that the court instead should have given the jury a verdict form requiring the jury to determine whether there had been a writing memorializing the termination.  Because LAMCO failed to object to the verdict form below, our review is for plain error.  See Fed. R. Civ. P. 51(d)(2).[8]

---

[8] Under this standard of review, LAMCO must show an error that was plain, (i.e., obvious and clear under current law), prejudicial (i.e., affected the outcome of the district court proceedings), and

-13-

This claim amounts to a rehash of LAMCO's argument regarding the district court's termination instruction. Accordingly, for reasons already discussed, the claim fails.

### C. Closing Argument

LAMCO claims that counsel for ASCAP made improper statements to the jury during closing argument. According to LAMCO, ASCAP's counsel intimated to the jury that there never was an agreement between West Side and ACEMLA (LAMCO's predecessor in interest).

To fully understand LAMCO's claim, some additional background information is necessary. At trial, evidence was presented that indicated that ACEMLA did not exist in 1982. This evidence was a 1985 decision from the Copyright Royalty Tribunal that effectively concluded that ACEMLA did not exist in 1982. In relevant part, the Tribunal wrote:

> The Tribunal concludes from the evidence established on the record that Mr. Bernard began a music publishing company sometime before April 1981, that he incorporated in April, 1981, and that he filed an assumed name for a subdivision of his music publishing company to be called ACEMLA in April, 1984. Since LAM has rescinded its claim that either Latin American Music or Latin American Music Co., Inc. were performing rights societies in 1982, and 1983, and since ACEMLA did not even legally exist until 1984, none of the LAM

---

that seriously impaired the fairness, integrity, or public reputation of the judicial proceedings. See Colon-Millin v. Sears Roebuck de P.R., Inc., 455 F.3d 30, 41 (1st Cir. 2006).

-14-

claimants were a performing rights society in 1982 and 1983.

However, Mr. Bernard claims that ACEMLA began in 1980 or earlier.  The record is devoid of any activity by ACEMLA before 1984.  ACEMLA did not license a single user, receive a single royalty or make a single distribution in 1982 and 1983.  Not a single agreement with a domestic or foreign entity refers to ACEMLA.

Based on the Copyright Royalty Tribunal decision, which was entered into evidence as Exhibit 18, ASCAP's attorney said the following to the jury during closing argument:

Now, remember, this agreement is purportedly with ACEMLA.  Remember that?  Not with LAMCO.  With ACEMLA.  But in 1982, as the date of the agreement, what do we know?  Was there ACEMLA active?  No . . . .  That's what the Copyright Tribunal held.  And you can read that from Exhibit 18, which we read at the very last part of the case.

These comments form the basis of LAMCO's claim.  Because LAMCO did not object to these comments in a timely fashion, our review is for plain error.  Smith v. Kmart Corp., 177 F.3d 19, 25 (1st Cir. 1999); see also Wilson v. Town of Mendon, 294 F.3d 1, 16 n.30 (1st Cir. 2002) (explaining that a party should typically voice such an objection at the conclusion of an opponent's closing argument).

There was no plain error here for at least two reasons.  First, we doubt there was any error in the first place.  Counsel's statements appear to fall within the bounds of permissible argument.  The statements are supported by the Copyright Royalty

-15-

Tribunal decision, an exhibit that was admitted into evidence without any objection from LAMCO.

Second, even if there was error, any possible prejudice that the statements could have caused LAMCO was countered by the district court's instructions to the jury. The district court effectively instructed the jury that the 1982 contract did exist. Again, some background information is necessary. West Side entered into two separate contracts with ACEMLA concerning Caballo Viejo, the 1982 contract, which is relevant to this particular dispute, and a 1981 contract, which expired by its own terms in 1986. The district referred to both contracts when instructing the jury, thereby dispelling any notion that the 1982 contract did not exist. The district court instructed the jury:

> In order for ASCAP to prevail on its declaration of legal rights claim, ASCAP must prove by a preponderance of the evidence that the agreements between West Side Music and LAMCO parties had either expired by their own terms or were terminated by Hector Varona before January 1st, 1992, so that ASCAP and not LAMCO had the rights to license public performances of Caballo Viejo after January the 1st, 1993.

(emphasis added).

Although we doubt that any more is necessary, we also note that the district court emphasized to the jury that closing arguments were not evidence and "of course cannot be considered." This further limited any ill effects that counsel's statements could have caused LAMCO.

-16-

### III.  Conclusion

For the reasons provided above, the judgment is **<u>affirmed</u>**.