# United States Court of Appeals
## For the First Circuit

No. 09-2231

SHELDON G. ADELSON,

Plaintiff, Appellee,

v.

MOSHE HANANEL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Boudin and Howard, Circuit Judges
and Barbadoro,[*] District Judge.

Lawrence G. Green, with whom Lynn C. Norton and Burns & Levinson LLP were on brief, for appellant.
Andrew H. Schapiro, with whom Christopher J. Houpt and Mayer Brown LLP were on brief, for appellee.

July 13, 2011

[*]Of the District of New Hampshire, sitting by designation.

**HOWARD**, **Circuit Judge**.  Appellee Sheldon Adelson brought this declaratory action to determine rights under an oral contract that he had negotiated with appellant Moshe Hananel.  In the district court Hananel argued that the agreement, pursuant to which he was employed by a company owned by Adelson, entitled him to obtain a twelve percent investment in Adelson's casino venture in Macau.  Adelson claimed that their agreement was not so broad as to contemplate the Macau investment option.  Rather, the contract limited Hananel to reaping twelve percent of net profits from high-tech sector investments in Israel that had been discovered, recommended and supervised by Hananel, and that were realized while he was employed by Adelson's company.

In a prior appeal of this matter, Adelson v. Hananel, 510 F.3d 43 (1st Cir. 2007) ("Adelson I"), we reversed the district court's forum non conveniens dismissal, but we did uphold the court's determination that, under the prima facie standard, Hananel was subject to specific personal jurisdiction.  After a three-week bench trial on remand, the district court ruled in favor of Adelson, declaring that Hananel did not hold an option to obtain a twelve percent interest in Adelson's Macau casino.  Adelson v. Hananel, 641 F.Supp.2d 65 (D. Mass. 2009) ("Adelson II").  Hananel appeals from this judgment, arguing that the district court lacked personal jurisdiction, erroneously assigned to him the burden of proof, abused its discretion regarding a missing witness, and made

-2-

factual errors regarding the formation and performance of the contract.  We affirm.

## I. Background

Hananel is a native, citizen, and resident of Israel. Adelson is a U.S. citizen and a permanent resident and domiciliary of Nevada, where he votes, owns property, and holds a driver's license.  Adelson is also a native of Massachusetts and a current Massachusetts homeowner.  He has worldwide business connections and investments, and he owns a warren of businesses known as the "Interface Group."

On the basis of the disputed oral contract negotiated with Adelson, Hananel worked for one of Adelson's companies, Interface Partners International, Ltd. ("IPI"), from approximately 1996 to 2000.  IPI is a Delaware corporation that Adelson founded in 1994 for the purpose of investing in Israel, with a particular focus on Israel's high-tech sector.

During the time period relevant to this case, IPI had offices in Needham, Massachusetts, and Ramat Gan, Israel.  Hananel was based in Israel and was responsible for seeking investment opportunities there.  Although IPI did not have regular employees working in Needham, it received ongoing legal and financial advice through frequent communications with one of the Interface Group companies co-located there, Interface Group Massachusetts ("IGM").  IGM personnel in the Needham office who provided such advice

included IGM's general counsel Paul Roberts, who also described himself as "counsel to IGI", and IGM's CFO Stephen O'Connor.  There was testimony at trial that IPI's funding customarily came from Adelson's personal account in Las Vegas, Nevada, but not before passing through the IPI Massachusetts "office" as a capital contribution to IPI Massachusetts that was then "lent" to IPI Israel.  Hananel made periodic calls to the Needham office and sent fax transmissions there at least monthly, including budget proposals for approval.  He made one brief visit to the Needham office in late 1995, just before commencing his duties for IPI, and he later attended a meeting in Massachusetts to seek business opportunities in his role as chairman of a company in which IPI had invested.

The parties' evidence about the terms of Hananel's compensation was irreconcilable.  As the district court accurately described the testimony:

> In the discussions regarding Hananel's employment, it is undisputed that Adelson and Hananel agreed he would have a salary of $100,000 a year.  They also agreed that Hananel would somehow receive 12% of the investments with which he was involved while at IPI . . . .  Adelson and Hananel have different memories of the details of the twelve percent.  Adelson testified that they agreed that Hananel would receive 12% of the net profits only of high tech investments in Israel that Hananel found, recommended, and supervised and which came to fruition while he was employed by IPI, but only so long as he remained employed there.  Hananel testified that they agreed that he would receive "options" of up to 12 percent on any investment he or the Israeli office "initiated" outside the United States without any other

geographic or time limitations so long as Hananel put up
the proportionate costs of the investment at any point.
Adelson II, 641 F.Supp.2d at 72.

In this appeal, Hananel argues, as to jurisdiction, that differences between the prima facie facts determined before the first appeal and the facts as later found by the district court at the merits trial undermine our previous decision on personal jurisdiction. He draws attention to prior references, by both the district court and by us, to Adelson being a resident of Massachusetts when in fact he was a resident of Nevada, and he emphasizes that at trial the district court concluded that the contract was formed in Israel rather than in Massachusetts. As noted, Hananel also presses claims that the district court erred in assigning the burden of proof to him rather than to Adelson; that it should have ordered an adverse inference based on the "missing witness" rule; and that the court misapprehended the facts surrounding both the formation of and his performance under the contract.

## II.  Jurisdiction

General jurisdiction over Hananel was not alleged, and he argues that the district court also lacked specific jurisdiction over him. We review the jurisdictional issue de novo. Barret v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001). We concluded in Adelson I that the district court had personal jurisdiction over Hananel under the prima facie standard, and that Massachusetts was not an

inconvenient forum. Adelson I, 510 F.3d 43. We are not persuaded that the facts as found at trial undermine our previous decision, and we conclude that Hananel's Massachusetts contacts support the district court's exercise of personal jurisdiction.

To establish specific personal jurisdiction over Hananel, Adelson "must demonstrate that the Massachusetts long-arm statute grants jurisdiction over Hananel and that the exercise of that jurisdiction comports with the Due Process Clause of the Fifth Amendment." Adelson I, 510 F.3d at 48 (internal citation omitted). We have construed the Massachusetts long-arm statute[1] as being coextensive with the limits permitted by the Constitution. We thus turn directly to the constitutional test for determining specific jurisdiction, see Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002), which has "three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness," Hannon v. Beard, 524 F.3d 275, 282 (1st Cir. 2008) (internal citation omitted). See also Astro-Med, Inc., v. Nihon Kohden America, Inc., 591 F.3d 1, 9 (1st Cir. 2009).

---

[1]The statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a).

## A. Relatedness

To demonstrate "relatedness," Adelson must show "'a demonstrable nexus between [his] claims and [Hananel's] forum-based activities, such . . . [that] the litigation itself is founded directly on those activities.'" Hannon, 524 F.3d at 280 (quoting Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)). "[T]he relatedness test is a 'flexible, relaxed standard,'" N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005) (quoting Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994)), and the analysis focuses on the relationship between the defendant and the forum. Hannon, 524 F.3d at 283 (citing Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995)); see also Goodyear Dunlop Tires Operations S.A. v. Brown, No. 10-76, slip op. at 2, 2011 WL 2518815, at *3 (U.S. June 27, 2011) ("Specific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy'"); J. McIntyre Machinery, Ltd. v. Nicastro, No. 09-1343, slip op. at 6, 2011 WL 2518811, at *6 (U.S. June 27, 2011) (Kennedy, J.) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n.8 (1984)) ("submission through contact with and activity directed at a sovereign may justify specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum'"). Because this is a contract dispute, in examining the defendant's relationship to the forum "we look to whether 'the defendant's activity in the forum state was

instrumental either in the formation of the contract or its breach.'" Adams v. Adams, 601 F.3d 1, 6 (1st Cir. 2010) (quoting Adelson I, 510 F.3d at 49). We may also consider whether the defendant was "subject to substantial control and ongoing connection to [Massachusetts] in the performance of the contract." Id. (internal quotation marks and citations omitted); cf. Hahn v. Vermont Law School, 698 F.2d 48, 49 (1st Cir. 1983) ("less [than substantial contacts are] required to support jurisdiction when the cause of action arises from the defendant's contacts with the forum . . . than when it does not.").[2]

Here, Hananel's contacts to the forum are directly related to his fulfillment of the terms of his employment contract as he claims them to be. As the district court recognized:

> [R]egardless of the contract's core terms, the parties' actual course of dealing connects the contract to Massachusetts: Hananel was in regular contact with Interface employees in Massachusetts, the money that funded Hananel's work came through Massachusetts, and Hananel's budgets were routinely faxed to the office in Massachusetts. . . . This is enough to satisfy the relatedness prong.

Adelson II, 641 F.Supp.2d at 78.

---

[2]Although, as Hananel points out, the district court concluded that the agreement was governed by Israeli law, this conclusion does not affect the outcome of our jurisdictional analysis because the issue before us is one of personal jurisdiction, not choice of law. J. McIntyre Machinery, Ltd. v. Nicastro, No. 09-1343, slip op. at 10, 2011 WL 2518811, at *9 (U.S. June 27, 2011) (Kennedy, J.) (citing Hanson v. Denckla, 357 U.S. 235, 254 (1958)); see also Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H, 295 F.3d 59, 64 (1st Cir. 2002) (contrasting personal jurisdiction analysis with choice of law analysis).

In addition, the record shows that Hananel visited the Massachusetts Interface office prior to beginning formal, full time employment with IPI in January 2006. Later, while employed by IPI, Hananel attended a board meeting in Massachusetts as a direct result of an IPI investment.[3]

Although Hananel does not deny that as manager of the IPI Israel office he had regular contact with the Needham office, he argues that his Massachusetts "activities were minor administrative tasks insufficient to warrant jurisdiction." This argument understates his managerial role in IPI and the importance of the Massachusetts funding connection to the finances of IPI Israel. As discussed in greater detail below, we disagree with Hananel's characterization of his Massachusetts activities as "purely incidental contacts" and agree with the district court that they evince the relationship between Hananel's actions under the oral contract and the forum of Massachusetts.

## B. Purposeful Availment

For there to be personal jurisdiction over Hananel, his contacts must "represent a purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of [Massachusetts's] laws and making [his]

---

[3]During his tenure with IPI, Hananel recommended that it invest in the tech company, IMDSoft. After the investment Hananel was named chairman of the board of IMDSoft and traveled to Andover, Massachusetts, in that capacity with the goal of advancing business partnership opportunities for IMDSoft.

presence before [Massachusetts'] courts foreseeable." Daynard, 290 F.3d at 60; see also J. McIntyre Machinery, slip op. at 11, 2011 WL 2518811, at *9 (specific jurisdiction calls for plaintiff to establish that defendant "engaged in conduct purposefully directed at the forum"); id. ("The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct.").

Hananel directed regular administrative and financial conduct toward Massachusetts, and his contacts with the state were voluntary and the result of more than just a single event or transaction. We see no reason to deviate from our previous conclusion that "given that it was Hananel who sought this employment contract with a company whose key officers were all located in Massachusetts and whose financial accounts were all administered out of Massachusetts, the court properly concluded that Hananel had purposefully availed himself of Massachusetts law." Adelson I, 510 F.3d at 50; cf. J. McIntyre Machinery, slip op. at 11, 2011 WL 2518811, at *9 (no specific jurisdiction where defendant had no office in the forum, never "sent any employees to[] the [forum]" and "does not have a single contact with [the forum] short of the" sole piece of equipment at issue in the suit).

That Hananel's December 1995 trip to Massachusetts was brief and its purpose was not found to be substantially related to negotiation of the agreement does not detract from the conclusion that the exercise of jurisdiction is appropriate. Hananel "need not have been physically present in [Massachusetts] in order to have 'transacted business' there" for purposes of establishing minimum contacts. Hannon, 524 F.3d at 281 (citing Fairview Mach. & Tool Co., Inc. v. Oakbrook Intern., Inc., 56 F.Supp.2d 134, 138 (D. Mass. 1999)) (holding that even though defendant had not been physically present in Massachusetts, "contacts that [he] would have had to make to arrange for [prisoner's] transfer . . . to Massachusetts are sufficient to constitute 'transacting business' under the broadly-construed long-arm statute").[4]

Here, as in Hannon, there was purposeful availment where Hananel's business activities for IPI involved, inter alia, "communication and interaction between [him] in [Israel] and [staff] in Massachusetts." See Hannon, 524 F.3d at 281. Affirming the district court's relevant factual findings, we conclude that Hananel's faxes, money transfers, and meetings demonstrate sufficient communications and interactions with Massachusetts to

---

[4]We have construed the Massachusetts statute broadly and "'do[] not require that the defendant have engaged in commercial activity. [The] language is general and applies to any purposeful acts by an individual, whether person, private, or commercial.'" Hannon, 524 F.3d at 280 (quoting Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986)).

-11-

satisfy us that Hananel had at least minimum contacts with the forum and that these contacts were not "random, isolated or fortuitous."  See Adelson I, 510 F.3d at 50.

## C. Reasonableness

To examine reasonableness, we consider the gestalt factors:  "(1) [Hananel's] burden of appearing, (2) [Massachusetts's] interest in adjudicating the dispute, (3) [Adelson's] interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and [5] the common interests of all sovereigns in promoting substantive social policies."  Adelson I, 510 F.3d at 51; see also N. Laminate Sales, 403 F.3d at 26 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

First, because Hananel has not demonstrated a "special or unusual burden" in staging a defense in Massachusetts over and above that of doing so in any foreign jurisdiction, we conclude that this factor does not weigh against jurisdiction.  See Pritzker, 42 F.3d at 64 ("[I]nsofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, we think this factor is only meaningful where a party can demonstrate some kind of special or unusual burden.").[5]

_____

[5]As we have recognized, Hananel has certain health issues that affect his lifestyle, such as his diabetes and legal blindness. Adelson I, 510 F.3d at 51.  But, these issues would affect him no matter where this dispute were tried.  Based on the evidence presented at trial, we do not see reason to deviate from our prior

-12-

Second, Hananel emphasizes the fact that both the district court and this court in the previous appeal were mistaken when they concluded that Adelson was a Massachusetts resident and domiciliary, when in fact he was a resident and domiciliary of Nevada. In presenting this argument, Hananel stakes too much on the importance of Adelson's state of residence to the personal jurisdiction analysis. Although this factual conclusion may have contributed to our original weighing of Massachusetts' interest in hearing the matter, Adelson's residency and domicile are not alone dispositive of personal jurisdiction and there are other facts that support Massachusetts' interests in the matter.

When previously we connected Adelson's assumed Massachusetts residency with Massachusetts' interests in the case, we also noted that "[Massachusetts'] interest . . . is further heightened by the involvement of IPI's executive officers who are employed in Massachusetts and of funds which are held and managed in Massachusetts." Adelson I, 510 F.3d at 51. Besides, given the relatedness and purposeful availment demonstrated here, the weight of this one factor within "reasonablenss" is slight. Sawtelle, 70 F.3d at 1394 (internal quotation marks omitted) ("[T]he weaker the plaintiff's showings on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of

conclusion that these issues would not make defense in Massachusetts a "special or unusual" burden compared to other foreign jurisdictions. Id.

unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness.").

Third, Adelson demonstrated his interest in obtaining convenient and effective relief through the federal courts in Massachusetts by bringing his suit there, and "nothing about this case suggests that those courts will have any difficulty rendering effective relief" if Adelson's declaratory action is affirmed. See Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 12 (1st Cir. 2002).

Fourth, although the district court noted that "the existence of prior lawsuits in Israel . . . make this case an inefficient burden on the judicial system," it concluded that "this is 'insufficient to tip the constitutional balance on the facts of this case.'" Adelson II, 641 F.Supp.2d at 79 (quoting Adelson I, 510 F.3d at 52).[6] We agree.

As to the fifth and final factor, we do not see how a finding of jurisdiction here would speak one way or another to the common interests of all sovereigns in advancing a particular social policy.

_____

[6]Subsequent to briefing and argument in this case, Adelson informed us of a decision by the Tel Aviv District Labor Court addressing claims that mirror some of those presented here. We have no occasion to consider that decision. We review this appeal based on the record before us.

-14-

Even if the last two factors weighed against jurisdiction, this alone would be "insufficient to tip the constitutional balance" on the facts presented here. Adelson I, 510 F.3d at 51; see also Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994) ("the reasonableness prong of the due process inquiry evokes a sliding scale"). We conclude that the sum of the gestalt factors weigh in favor of jurisdiction.

Given the reasonableness of exercising jurisdiction, the relatedness of the dispute to the forum, and Hananel's contacts with the forum, we affirm the district court's assertion of personal jurisdiction over Hananel.

### III.  Burden of Proof

We review de novo the placement of the burden of proof. Estate of Abraham v. C.I.R., 408 F.3d 26, 35 (2005).[7] Massachusetts law governs this issue, Palmer v. Hoffman, 318 U.S. 109, 117 (1943), and it does not call for the burden of proof to automatically be borne by the filing party in a declaratory action (here, Adelson).  Foley v. McGonigle, 326 N.E.2d 723, 724 (Mass. App. Ct. 1975) (internal quotation marks omitted) (stating the "fact that the plaintiff initiated this proceeding for declaratory relief does not shift th[e] burden to him"); accord Cardarelli Constr. Co. v. Froton-Dunstable Reg'l Sch. Dist., 349 N.E.2d 383,

---

[7]Hananel asserts that Adelson waived any right to argue that the burden of proof was Hananel's.  In light of our disposition of the issue, we need not address this argument.

384 (Mass. App. Ct. 1976) (citing <u>Stop & Shop, Inc.</u> v. <u>Ganem</u>, 200 N.E.2d 248, 252 (Mass. 1964)) ("It is well settled that a party asserting the illegality of a contract has the burden of proving the facts necessary to establish such illegality."). Instead, Massachusetts looks to which party would be seeking damages had the matter been filed as a standard suit rather than as a declaratory action. <u>Stop & Shop</u>, 200 N.E.2d at 252 (in a lease dispute, "[h]ad the lessors brought an action for damages for breach of an implied covenant to continue operations they would, of course, have had the burden of showing the covenant. That the lessee initiated the proceeding for declaratory relief does not shift that burden to the lessee.").

Here, Hananel seeks an interpretation of the agreement that would permit him to assert a contractual right of recovery. As the natural plaintiff who would have had the burden of proving his affirmative claim to the twelve percent option in a damages action, we see no impropriety in assigning the burden of proof to him. See <u>Markley</u> v. <u>Semle</u>, 713 A.2d 945, 947 (Me. 1998) (internal citation omitted) ("In a declaratory judgment action, . . . [t]he party who asserts the affirmative of the controlling issues in the case, whether or not he is the nominal plaintiff in the action, bears the risk of non-persuasion."); <u>Am. Eagle Ins. Co.</u> v. <u>Thompson</u>, 85 F.3d 327, 331 (8th Cir. 1996) (internal quotation marks omitted) ("It is a fundamental rule that the burden of proof

-16-

in its primary sense rests upon the party who, as determined by the pleadings, asserts the affirmative of an issue and it remains there until the termination of the action. It is generally upon the party who will be defeated if no evidence relating to the issue is given on either side.").

Regardless, any error in assigning the burden of proof is harmless unless "the court's . . . decision at the end of the trial turned on 'burden of proof' rules rather than on the weight of the evidence in the record." Applewood Landscape & Nursery Co., Inc. v. Hollingsworth, 884 F.2d 1502, 1506 (1st Cir. 1989). The district court's ruling indicates that it did not consider the burden of proof issue to be dispositive: after weighing evidence in the record, the district court concluded that "it is clear" that the parties did not reach "a meeting of the minds." In any event, no matter who bore the burden of proof, as discussed below the finding that Hananel failed to "initiate the investment" prohibits a holding in favor of Hananel's exercise of the option.

## IV. The Contract's Terms

We review the district court's findings of fact for clear error. Williams v. Poulos, 11 F.3d 271, 278 (1st Cir. 1993). The district court concluded that there was no "meeting of the minds" about the meaning of the "option" in the contract, and even "[i]n Hananel's best case" his work "[was] insufficient to constitute

-17-

initiating the investment, under any reasonable understanding of the term." Adelson II, 641 F.Supp.2d at 84.

It is not disputed that Hananel and Adelson spoke several times between August 1995 and December 1995 regarding Hananel's employment with IPI. As noted, however, what they agreed to is disputed. Hananel testified that the intention was for him to have an option covering any investment proposed by him, except for investments in the United States. Adelson's position has been that they agreed that Hananel would receive a portion of net profits from a much narrower category of investments.

It is also not disputed that Hananel, Adelson, and Roberts (IGM's general counsel) were present in the Needham, Massachusetts, office on December 5, 1995. But, the parties greatly dispute the exact contents and nature of that office visit. Adelson testified that the employment contract's final details were hammered out in that December meeting, including the meaning of alleged contract terms such as the share of "net profits minus losses." In stark contrast, Hananel testified that the contract was finalized in Israel, the employment contract was not discussed during the December office visit, and, in any event, that visit did nothing to change the substance of the contract.

The district court found that "while a meeting [in Massachusetts] may have taken place, it was at most a rehash of the terms of Hananel's contract, which had already been finalized with

-18-

Adelson in Israel." Adelson II, 641 F.Supp.2d at 73. It then concluded: "As to the extent and meaning of the term at the center of the dispute, the option in projects initiated by Hananel, it is clear that there was simply no meeting of the minds." Id. at 83 (emphasis added). We have scoured the record and have discovered no basis on which to upset that determination. As we have noted:

> In actions that are tried to the court, the judge's findings of fact are to be honored unless clearly erroneous, paying due respect to the judge's right to draw reasonable inferences and to gauge the credibility of witnesses. A corollary of this proposition is that, when there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. . . . [W]hen a case has been decided on the facts by a judge . . . an appellate court must refrain from any temptation to retry the factual issues anew.

Johnson v. Watts Regulator Co., 63 F.3d 1129, 1138 (1st Cir. 1995).

In sum, the district court's finding that there was no "meeting of the minds," was grounded in the record and not clearly erroneous. See United States v. Lara, 181 F.3d 183, 195 (1st Cir. 1995) ("After all, when the evidence gives rise to competing interpretations, each plausible, the factfinder's choice between them cannot be clearly erroneous.").

Moreover, even accepting Hananel's argument that there was a "meeting of the minds" about the existence and scope of the twelve percent option clause, the district court's finding that Hananel failed to "initiate" whatever investment(s) Adelson subsequently made in Macau was also not clearly erroneous.

-19-

As the district court noted, there were questions of veracity in both parties' accounts of the employment contract, the "option," and the discussions of Macau. But, even viewing Hananel's account in the most favorable light, a reasonable observer applying practical business sense and plain meaning could conclude easily that satisfying the "initiate" requirement of the option – on what would become a $7 billion project – would have required Hananel to do more than what his evidence showed: discuss Macau during a few 1999 meetings; prepare limited materials on Macau for Adelson's review; "research[] Macau generally" and potential investments in Macau; give Adelson some third-party maps and brochures; and urge him to visit Macau. As the district court described it, "Hananel may have gotten Adelson's wheels spinning, but he never got anything in gear." Adelson II, 641 F.2d at 84.

## V. The Missing Witness Rule

Hananel's final argument is that the district court abused its discretion when it denied him a "missing witness" inference, because Adelson did not call an Israeli witness, Danny Raviv, as Hananel had expected. After a jury trial, a claim about failure to give a missing witness instruction indeed would be reviewed for abuse of discretion. Latin Am. Music Co. v. Am. Soc. of Composers, Authors & Publishers, 593 F.3d 95, 101 (1st Cir. 2010) (instructing jury on "missing witness" rule reviewed for abuse of discretion). As this was a bench trial, however, we

-20-

review for clear error the decision not to draw the inference. See Bogosian v. Woloohojian Reality Corp., 323 F.3d 55, 68 (1st Cir. 2003). We conclude that the district court, as factfinder, was under no obligation to draw the adverse inference, for the "'missing witness' rule permits, rather than compels, the factfinder to draw [the] inference . . . , particularly where the factfinder concludes that the party who requested the . . . inference failed to subpoena a witness otherwise available to testify." Id. at 67 (internal citations omitted) (emphasis added) (no error in bench trial where district court did not draw adverse inference from absence of witnesses).

Hananel has not shown the necessity for applying the missing witness rule here. First, he offers no concrete evidence that demonstrates that Raviv was peculiarly available or obviously partial to Adelson. United States v. Spinosa, 982 F.2d 620, 631-32 (1st Cir. 1999) (missing witness rule permits adverse inference only when witness is "peculiarly available to" to party not seeking the instruction or "favorably disposed" to him); Steinhilber v. McCarthy, 26 F.Supp.2d 265, 280 (D. Mass. 1998). Second, he has not provided a satisfactory explanation for why, if Raviv's testimony was so essential, he failed to take any action to compel the witness's appearance in court. According to Hananel, other witnesses in Israel for whom he had obtained letters rogatory were not as important to the disposition of this action as Raviv. Yet,

he failed to pursue similar action to depose Raviv, and he offers no proof that obtaining a subpoena or letter rogatory would have been impossible.  See United States v. Anderson, 452 F.3d 66, 82 (1st Cir. 2006) (denying instruction, stating, "The fact that [the party] was able to subpoena [the witness] yet failed to do so gives us additional reason to believe that the district court was correct in finding that [the witness] was not 'peculiarly available' to the [opposing party]").

As the district court stated:

> In this case, however, there is no reason to believe that Raviv was not available to testify if called by the Defendant.  Defendant made no effort to call him to testify or to depose him.  In this case, where Raviv's testimony would likely cut both ways, the Court is unwilling to allow Defendant the dual benefit of avoiding Raviv's potentially damaging testimony by purposely failing to call him, while simultaneously giving him the benefit of a negative inference for Plaintiff's failure to call him.

Adelson II, 641 F.Supp.2d at 77 n.3 (internal citation omitted).

This finding was not erroneous.  The appellant's argument appears to be a manifestation of his regret at his decision not to confront Raviv in court.  Regret is not a ground for reversal.

## VI.  Conclusion

For the reasons set forth above, we **affirm** the judgment of the district court.

-22-