# United States Court of Appeals
## For the First Circuit

No. 13-2352

UNITED STATES,

Appellee,

v.

TERRANCE MOON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Selya, Circuit Judge,
Souter,[*] Associate Justice,
and Lipez, Circuit Judge.

Derege B. Demissie for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom
Carmen M. Ortiz, United States Attorney, was on brief for appellee.

September 18, 2015

---

[*]    Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**LIPEZ, Circuit Judge**. Appellant Terrance Moon challenges his conviction for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), on numerous evidentiary grounds. He also challenges his sentence under the Armed Career Criminal Act ("ACCA"). Finding no merit to any of these challenges, we affirm.

**I.**

**A. Factual Background**

The following facts are undisputed. On February 5, 2011, Detective Michael Ross obtained search warrants for Moon's person and an apartment at 99 Ormond Street in Boston. In his supporting affidavit, Ross stated that, based on information from a confidential informant ("CI") who previously purchased heroin from Moon, the Boston Police Department ("BPD") had conducted surveillance of three recent controlled buys by this CI from Moon, including one within the "last seventy-two hours." Ross stated that during that most recent transaction, Moon was spotted driving a green Mercedes that was registered to Sherrica Hendricks, his longtime girlfriend, at 99 Ormond Street, Apartment #1, in Mattapan.[1]

---

[1] Ross also stated that he had intentionally avoided including details about past investigations in which the CI had provided reliable information to preserve the BPD's ability to work with informants and protect the CI from harm. He explained that providing identifying information about past investigations would allow persons to build a "pyramid" in an attempt to identify the

The next day, officers arrived at 99 Ormond Street to execute the search warrants. Detective Ross and Sergeant Detective Paul Murphy observed Moon exit 99 Ormond Street, walk down the street to meet with an unknown individual, and return to the building. The officers approached Moon, read him his <u>Miranda</u> rights and searched his person, recovering, among other things, a set of keys. The officers told Moon they had a search warrant for his apartment at 99 Ormond Street, but Moon denied that he lived at that location. When Ross told Moon he had just seen him leaving the building, Moon admitted he lived there. Officer Steven Smigliani arrived at the scene and placed Moon in the back of his cruiser while Ross and Murphy searched Moon's apartment. Ross opened the apartment with the keys he had recovered from Moon's pocket. Moon was escorted into the apartment, where Ross showed him a copy of the search warrant and asked if there were any drugs in the apartment. Moon responded that there were some drugs on a nightstand in a red box in his downstairs bedroom.

During the subsequent search of Moon's bedroom, the officers found plastic bags containing what appeared to be crack cocaine and heroin in a small, red box on the nightstand, and a larger bag of heroin within a large bag of rice in the nightstand. The officers found another bag containing heroin packed in rice under the bed, and in various locations around the room they

informant, thereby putting him/her at risk.

discovered drug paraphernalia: a scale with drug residue (found inside the nightstand), a box of plastic baggies, several cut-off baggies, a plate with a razor blade on it, a spoon, and a sifter. Under the mattress on the bed, the officers found a Sturm, Ruger & Co. Model Service-Six .357-caliber revolver loaded with six rounds of ammunition. The officers also found documents bearing Moon's name in the bedroom, including his birth certificate, resume, and prescription medication.

The officers reported the firearm and ammunition to Officer Smigliani, who was by then at the police station with Moon. Smigliani notified the booking officer to add a firearm and ammunition charge to the drug charges already being processed.

## B. Procedural Background

### 1. The Indictment

On June 8, 2011, a federal grand jury returned a multi-count indictment charging Moon with possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841(a) (Counts One and Two); being a felon[2] in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count Three); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Four). The government voluntarily dismissed the drug trafficking counts after

---

[2] The parties stipulated that Moon had a qualifying felony conviction.

learning that the substances had been tested by a state laboratory chemist who had used improper techniques.[3]  The case thus moved forward with only the single felon-in-possession charge.

### 2. Pre-Trial Motions

Moon unsuccessfully filed a series of pretrial motions seeking to suppress evidence concerning the drugs and drug paraphernalia found at his apartment and to obtain copies of affidavits prepared by BPD officers about the CI and the controlled buys.  He requested a <u>Franks</u> hearing to probe the veracity of Detective Ross's affidavit and its adequacy to support the search warrants executed at his apartment.  <u>See</u> <u>Franks</u> v. <u>Delaware</u>, 438 U.S. 154, 155-56 (1978).  He also renewed a previously filed motion for discovery of any exculpatory evidence regarding the CI, as well as the exact dates and times of the controlled buys.  The district court denied both motions.

Moon also moved in limine under Federal Rules of Evidence 404(b) and 403 to exclude testimony regarding the heroin and crack cocaine found in his bedroom and his statements to the officers regarding the drugs, contending that such information would be unfairly prejudicial evidence of uncharged conduct.  In opposing the motion, the government stated that it intended to introduce evidence showing where the drugs and  drug-related items were found

---

[3] <u>See</u> <u>Wilkins</u> v. <u>United States</u>, 754 F.3d 24, 27 (1st Cir. 2014) (discussing state drug-testing laboratory scandal).

in Moon's apartment because that information went "directly to proving the element of knowing possession of a firearm, including by way of showing motive." The government also explained that the recovery of cocaine and heroin from the red box on the nightstand -- where Moon said drugs could be found -- provided "direct and powerful evidence of defendant's dominion and control over the very room in which the firearm at issue lay."

The district court denied the motion, finding the drug evidence had special relevance under Rule 404(b) to prove Moon's knowledge of and dominion over the firearm. After conducting its Rule 403 balancing, the court held that the probative value of the drug evidence was not outweighed by any threat of unfair prejudice. The court proposed to give the jury a limiting instruction at the time the drug evidence was introduced.

In early January 2013, as his trial approached, Moon moved for an order requiring the government to furnish any exculpatory evidence regarding the CI to the district court for in camera review. He argued that the government's intention to introduce evidence depicting him as a drug dealer, based on "purported controlled buys," "entitled [him] at a minimum, [to] an in camera review [of] the requested evidence prior to his trial." Moon clarified that he was "not request[ing] disclosure of the information but rather an in camera review by the Court to verify the Informant's existence and his or her actual participation in

the controlled buys."  He claimed that such a review was necessary because "various allegations of misconduct" against Detective Ross and Sergeant Detective Murphy, resulting in "'not sustained' or 'exonerated' dispositions[,] . . . raise substantial questions as to potential irregularities" in the BPD investigation.  He further argued that he was entitled to the requested discovery under Brady v. Maryland, 373 U.S. 83 (1963).

The district court heard argument on the motion at the pretrial conference, during which Moon's counsel emphasized "we're not asking for disclosure" and "we're not asking them to disclose it to us."  After confirming that the government did not intend to call the CI as a witness at trial, the court denied the motion.

In the week before his trial began, Moon filed a motion in limine seeking to bar the government from eliciting expert testimony from BPD officers about whether the physical evidence discovered at Moon's apartment suggested drug distribution and about the frequency with which firearms are found in connection with drug distribution.  Moon argued that such testimony would be unfairly prejudicial as it would allow the government to introduce uncharged conduct and  indicate that the government believed he was a drug dealer.  He further asserted that such testimony would be improper evidence of his "mental state as it relates to the essential element of possession: knowledge and intent to exercise

dominion and control," and also would be impermissible expert testimony. The court allowed the testimony.

Also shortly before trial, Moon objected to the government's use of his prior convictions for impeachment. [App at 609] The district court ruled that the government could introduce three 2008 convictions and a 2001 robbery conviction by asking Moon about "the date of the conviction, the court, and the conviction itself."

## C. Verdict and Appeal

After a four-day trial, the jury found Moon guilty on the firearms charge and the district court imposed a 220-month term of imprisonment. On appeal, he challenges both his conviction and sentence, claiming the district court erred when it (1) allowed the government to present evidence of uncharged drug possession and distribution throughout his trial, (2) allowed the government to introduce evidence of the details of Moon's nearly ten-year-old conviction for robbery, (3) allowed the arresting officers to offer lay opinion testimony that the substances found in Moon's bedroom were heroin and crack cocaine, and that drug dealers often possess firearms, (4) denied his request for the disclosure of information about the CI, or, in the alternative, to conduct an in camera review of the documents supporting the search warrant application, and (5) when it applied the ACCA in calculating his sentence.

## A. The Trial Testimony Pertinent to the Appeal

The jury heard nine witnesses, including Moon, during the four days of trial. Six witnesses testified for the prosecution, and three for the defense. We describe below the relevant testimony.

### 1. Detectives Murphy and Ross

Detective Murphy testified that he has executed more than 500 search warrants, and that he identifies controlled substances based on their shape, size, and the way in which they are packaged. He stated that drug dealers use the corners of sandwich bags to package drugs and the remaining part of the bag is known as a cut baggie, several of which were found in Moon's apartment. Murphy stated that he believed the substances found at Moon's apartment to be crack cocaine and heroin. He further testified that "a lot of drug dealers will use [a firearm] for protection or safety."

Detective Ross testified that he found a .357 revolver under the mattress in the bedroom. Ross stated that Moon told him there were drugs in a red box on the nightstand. During Ross's testimony, the government introduced into evidence photographs of the drugs and drug paraphernalia seized from Moon's bedroom. Ross testified that these items were consistent with packaging drugs for distribution, and that a photograph of the seized substances showed cocaine and heroin packaged for sale.

## 2. Moon and Hendricks

Moon testified in his own defense that the gun found under the mattress was not his, that he had never seen it in the apartment, and that he would not allow a gun in his apartment. He acknowledged that he had a history of drug use, which increased when his girlfriend, Sherrica Hendricks, left him. After the breakup with Hendricks, who moved out of the apartment in January 2011, several friends began coming to his apartment and using drugs in his bedroom. Moon testified that his friends sometimes would continue to use drugs in the bedroom after he had gone upstairs to sleep on the couch in the living room, and one of his friends, "P," sometimes slept in the bedroom. During the week before he was arrested, he "slept more on the couch." He reported that the day before the search warrants were executed, he and his friends had pooled their money to buy the heroin and cocaine that was found in his bedroom.

Moon acknowledged ownership of the drug paraphernalia found in the bedroom, including a sifter used for heroin, an ashtray with a wooly blunt, a plate with a razor used to crush crack, and a spoon used to "smash down the crack." He further testified that the drugs found in his bedroom were more than he would purchase just for himself, and that he and his friends had purchased the larger bags of drugs because they intended to party that night.

The government argued that Moon's testimony opened the door to questions on cross-examination about his possible drug dealing because he "has certainly been intimating . . . that the drugs that he had were for personal use, not for distribution." Specifically, the government sought to question Moon about the transaction officers observed on the street just before executing the search warrants, the controlled purchases on which the warrant was based, and Moon's arrest six months earlier when Ross and Murphy found five grams (a "finger") of heroin in Moon's car. Over Moon's objection, the court allowed the questions. Among the questions posed during the cross-examination, the government asked Moon if he intended to sell the drugs found in his bedroom on the day of the search, and whether he had sold drugs in the few days prior to the search. Moon denied that he ever sold or intended to sell drugs. In addition, Moon denied possessing a finger of heroin, claiming that he had only "two or three" grams at the time of his earlier arrest.

Hendricks testified that she never saw a gun in the apartment during the two years she lived with Moon at 99 Ormond Street, nor did she ever see Moon with a gun. She testified that Moon had occasional visitors to the apartment, though on cross-examination she recalled only a single instance in which Moon had a visitor in the bedroom.

**B. Introduction of Drug-Related Testimony**

Moon argues that the district court abused its discretion under Federal Rules of Evidence 404(b) and 403 in allowing testimony about the drugs and drug paraphernalia found in his bedroom. He complains that the drug evidence became the focus of the trial, and that the government introduced it to convey the impermissible message that, because Moon was a drug user, and potentially a drug seller, he was the type of person to possess a gun. He explicitly targets the officers' direct testimony and appears to challenge as well the government's line of questioning in cross-examining him.

Under Federal Rule of Evidence 404(b), evidence of a "crime, wrong, or other act" may not be introduced at trial to prove the defendant's propensity to commit the charged offense. Fed. R. Evid. 404(b)(1). However, such wrongful-acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id. at 404(b)(2). Even if evidence fits within one of the Rule 404(b) categories and is thus relevant and admissible, Rule 403 authorizes the trial court to exclude the material if its probative value is substantially outweighed by a danger of, inter alia, unfair prejudice. Fed. R. Evid. 403. Evidence is excludable only if it is unfairly prejudicial, meaning that it has "an undue tendency to suggest

decision on an improper basis."  Fed. R. Evid. 403 advisory committee's notes on 1972 proposed rules.

A district court's ruling that evidence may be admitted consistently with both Rules 404(b) and 403 is reviewed for abuse of discretion.  United States v. DiRosa, 761 F.3d 144, 152-54 (1st Cir. 2014).  We afford "great deference to a district judge's balancing of probative value versus unfair prejudice."  United States v. Breton, 740 F.3d 1, 14 (1st Cir. 2014).

We find no abuse of discretion in the district court's allowance of the officers' testimony concerning the drugs and related paraphernalia found in Moon's bedroom.  That evidence was relevant both to show Moon's control over the area where the gun was found and to prove his involvement in drug trafficking, which "provides a compelling motive for possessing the gun, namely, to protect his drugs and drug money."  United States v. Smith, 292 F.3d 90, 99 (1st Cir. 2002); see also United States v. Torres-Rosario, 658 F.3d 110, 114 (1st Cir. 2011) (stating that "the government was free to invite the jury to infer that Torres-Rosario dealt in drugs" based on the discovery of drugs and baggies in his bedroom, "furnishing a motive for him also to possess a gun to protect them"); United States v. Weems, 322 F.3d 18, 25 (1st Cir. 2003) ("As in Smith, the evidence of drug dealing at the house was relevant.  It certainly gave Weems a motive to have the gun on him.").

-13-

Moon asserts that the plethora of personal items found in the bedroom, including his resume and prescription medication, made control of the bedroom a non-issue and the introduction of the highly prejudicial drug evidence therefore unnecessary. That assertion would have more force if the drugs and related paraphernalia were not independently relevant as evidence of drug trafficking. The quantity of drugs found in the room -- two large bags of heroin, plus the crack and heroin in the red box on the nightstand -- together with equipment commonly used by drug traffickers were enough to support admission of the evidence as suggestive of drug dealing.

As for Rule 403 balancing of relevance and prejudice, the court minimized the risk of prejudice by twice giving limiting instructions to the jury. During Ross's testimony, the court reminded the jury that Moon was not charged with any drug offense, and stated that the testimony was being admitted for a limited purpose related to the firearms charge, i.e., to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake. The court also told the jurors they were "not permitted to . . . conclude that because he committed a crime related to drugs he has a propensity for committing crimes and, therefore, committed the crime with which he is charged in this case." The court included a similar instruction in its final charge. Given these precautions, we see no reason to second-guess

-14-

the court's judgment that the evidence should be admitted. See United States v. Gonyer, 761 F.3d 157, 164 (1st Cir. 2014) ("A district court's weighing of the positive and negative effects of specific evidence demands considerable respect, especially when, as in this case, limiting instructions were deftly and timely deployed." (internal quotation marks omitted)).

The court's allowance of the government's drug-related cross-examination of Moon was likewise within its discretion. Moon's testimony implied that the drugs and related paraphernalia found in his room were for personal use.[4] The government's subsequent questioning about drug transactions was designed to rebut the personal-use narrative and, in general, to undermine Moon's credibility.[5] The questions aiming to offset Moon's claim of personal use -- and thereby stimulate an inference of drug trafficking -- advanced the government's theory that the gun found

---

[4] When questioned by his attorney, Moon admitted ownership of the drug-related items found in his bedroom, including an ashtray containing "pieces of the wooly blunt that I smoked," and two plates: "[w]e used one plate when we was cutting up the coke, the crack, another plate for the heroin."

[5] For example, the prosecutor asked Moon a series of questions about the three government-orchestrated controlled buys. Specifically, he was asked, "so you're saying that no one called you . . . to request that you sell heroin to them?" Moon denied that anyone had. He next was asked if he had driven Sherrica's car "to meet with someone to sell them heroin?" Again, Moon denied that he had. Finally, the prosecutor asked: "[D]id you . . . any time before February 1st of 2011, within a month, did you sell anyone heroin in the streets of Boston?" Moon again responded, "No."

under Moon's mattress was used "to protect his drugs and drug money." <u>Smith</u>, 292 F.3d at 99. As noted, the propriety of government reliance on that theory is well supported by our precedent, and the district court thus properly exercised its judgment to allow clarifying questions in response to Moon's direct testimony. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Tetioukhine</u>, 725 F.3d 1, 10 (1st Cir. 2013).

## C. Prior Conviction

Federal Rule of Evidence 609, inter alia, permits the government to admit evidence of a defendant's prior felony conviction, for impeachment purposes, if the conviction is less than ten years old and its probative value outweighs its prejudicial effect. <u>See</u> Fed. R. Evid. 609(a)(1)(B). As described earlier, the district court allowed the government to introduce three 2008 convictions and a 2001 robbery conviction. Challenging on appeal only the government's use of the nearly ten-year-old robbery conviction, Moon claims that the court erred in balancing prejudice and probative value.

On the second day of trial, Moon's attorney renewed his pretrial objection to the use of the robbery conviction on the ground that it was "very close in nature to a weapons" charge and, accordingly, the government should be prohibited from raising it. In response, the government said that it would ask Moon "are you the same person who was previously convicted of robbery in Suffolk

Superior Court on March 29, 2001?" In light of that limited inquiry, the court ruled that the probative value of the prior conviction outweighed the prejudicial effect of its introduction, and the question was therefore permissible.

Knowing that he would be asked about the conviction on cross-examination, Moon preemptively testified on direct that he had been convicted of unarmed robbery in 2001. When his lawyer asked him to explain the conviction, Moon provided his account of the events:

> This guy came in our neighborhood, he was asking people to get him some drugs, can they get him some drugs. He asked me; I told him I could get it for him. So what I did was I went and got a napkin, I didn't have any drugs, but I wanted the money. I got a napkin, so I told him the drugs were in the napkin, handed him the napkin, got the money, and walked away. I walked away, and I was surrounded by the police. He turned out to be an undercover cop, and I was convicted of robbery.

Following Moon's testimony, but before beginning its cross-examination, the government argued that Moon had opened the door to questions about the circumstances surrounding the robbery conviction. The district court agreed,[6] but said it would be "listening carefully" to the prosecutor's questions to determine if they were unduly prejudicial under Rule 403.

---

[6] The court noted that "the government wouldn't have been able to get into this issue had it not been for [Moon's] testimony," in which he "proffered his version of facts for the underlying conviction and was selective about what facts he addressed on direct."

During its cross-examination, the government asked Moon about the facts underlying the robbery conviction, including whether he had gotten into a car with the officer, snatched money from the officer's hand, told the officer, "I wasted enough time with you, get out of here before you get hurt," and negotiated the price of the heroin. The district court sustained Moon's objection, however, to questions asking Moon if he had told the officer he had a pistol with him during the robbery, ruling that this was too "close to the line" given that Moon was facing a gun charge in this case.

Although Moon invokes Rule 609 in asserting that the evidence surrounding his 2001 robbery conviction was improperly admitted, that rule is beside the point where, as here, the challenged evidence was offered to contradict specific testimony. A party can "open the door to evidence about prior convictions . . . regardless of whether the conviction meets Rule 609's requirements." Tetioukhine, 725 F.3d at 9 (internal quotation marks omitted). "A party may introduce evidence to impeach a witness's specific testimony by contradiction," and "[t]his principle applies to the admission of prior convictions." Id. at 8-9.

By providing his own depiction of the robbery, Moon opened the door to the government's cross-examination about the events leading to the conviction. Moon's account had the potential

-18-

to "create[] a false impression that made the [underlying] circumstances . . . relevant," United States v. Landry, 631 F.3d 597, 605 (1st Cir. 2011), and, hence, the court did not abuse its discretion by allowing the government to question him about facts inconsistent with his version of the events. See Tetioukhine, 725 F.3d at 10 ("Tetioukhine's repeated attempt[s] to minimize the conduct for which he was convicted were more than sufficient to open the door to further cross-examination on this subject." (alteration in original) (internal quotation marks omitted) (citation omitted)); Landry, 631 F.3d at 605 (finding no abuse of discretion in admission of evidence to refute defendant's misleading testimony).

## D. Arresting Officer Testimony

Both pretrial and at trial, Moon sought to prevent Detective Ross and Sergeant Detective Murphy from offering opinion testimony that drug dealers typically keep firearms to protect themselves and their drugs, and that the drugs seized in Moon's apartment were heroin and cocaine.[7]  The district court admitted this testimony as lay opinion evidence, citing our decision in

_____

[7] We note that Moon's objection to the officers' testimony about the drugs found in his bedroom is largely undermined by his own admission that the substances were heroin and cocaine.  When asked on cross-examination to identify the substances in a photograph taken by the police, Moon said, "that's the coke we had and the methadone pills that I was going to take."  In explaining another photograph, he stated: "That's heroin . . . .  I think it's, like, three grams, three and a half grams."

-19-

<u>United States</u> v. <u>Valdivia</u>, 680 F.3d 33 (1st Cir. 2012).[8]  We review

the admission of lay or expert testimony for abuse of discretion.

<u>United States</u> v. <u>Diaz-Arias</u>, 717 F.3d 1, 11 (1st Cir. 2013);

<u>Valdivia</u>, 680 F.3d at 50.

The district court correctly concluded that admission of

the offered testimony is consistent with our precedent as

articulated in <u>Valdivia</u>.[9]  Federal Rule of Evidence 701 provides:

---

[8] The district court stated:

Finally, there was an objection to allowing the
detective, I believe it was Detective Ross, to testify
about whether or not drug distributors or drug dealers
often possess firearms.  And there was an objection under
[Rule] 702, that there wasn't a proper foundation laid
for that expert testimony. I would say that I don't think
the admission of that testimony was improper. The 1st
Circuit had addressed this issue in [<u>Valdivia</u>]. I don't
believe that that case requires the same showing for the
testimony that was proffered that is required for experts
squarely offered under [Rule] 702. And even if [Rule] 702
did apply, I think that testimony was properly admitted.

[9] Speaking only for myself, I adhere to the view set forth in
my concurrence in <u>Valdivia</u> that the admission of certain types of
opinion testimony of police officers as lay opinion is contrary to
the requirements of Rules 701 and 702:

[T]he explicit language of Rule 702 sets forth a bright
line rule.  If a witness has acquired "specialized
knowledge" on the basis of "knowledge, skill, experience,
training or education," and presents that knowledge to a
jury "in the form of an opinion or otherwise," that
witness is testifying as an expert witness, Fed. R. Evid.
702, who is subject to the disclosure requirements for
expert testimony.

<u>Valdivia</u>, 680 F.3d at 60 (Lipez, J., concurring). Our court's
position that police testimony under Rule 702 is lay opinion
testimony under Rule 701 "has created in some of our precedents an
unwarranted police exception from the requirements applicable to

-20-

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

In Valdivia, we upheld, as lay opinion under Rule 701, the admission of a law enforcement agent's testimony describing the use of cell phones by drug traffickers, citing the agent's "particularized knowledge" derived from his experience in past drug investigations. See 680 F.3d at 50-51 (quoting Fed. R. Evid. 701, advisory committee's note to 2000 amendment).

Here, the officers also had the requisite knowledge of drug-dealing practices. See id. at 50. Ross, a 27-year veteran of the BPD, testified that he had experience in identifying controlled substances, particularly from occasions when he purchased drugs on the streets of Boston. Murphy, a 33-year veteran of the BPD, testified that he had made a minimum of 5,000 drug arrests during the course of his career, and that "a lot of drug dealers will use [a firearm] for protection or safety." The officers' testimony, based on their extensive experience, that the substances appeared to be heroin and crack cocaine, and that drug dealers often possess firearms, was, according to our precedent, thus properly admitted

---

expert testimony." Id. at 61. Our law on this point is at odds with virtually every other circuit. Id. at 56 n.16 (collecting cases). I continue to believe that our law should be changed through an appropriate en banc proceeding.

under Rule 701. See United States v. Santana, 342 F.3d 60, 68-69 (1st Cir. 2003) (finding no abuse of discretion in admitting agent's lay opinion testimony that he could smell marijuana during the search of a home); United States v. Maher, 454 F.3d 13, 24 (1st Cir. 2006) (holding that an officer's testimony that based on his experience certain post-it notes were likely drug orders and the number "4" likely referred to a quantity of the drug found by law enforcement "did not cross the line to become expert testimony") (internal citation omitted); United States v. Paiva, 892 F.2d 148, 157 (1st Cir. 1989) (finding that past experience and personal knowledge may qualify a lay witness to identify drugs).[10]

## E. The Existence and Identity of the Informant

Moon argues that the district court violated his right of confrontation and his due process rights when it denied his request pretrial, during trial, and in his new trial motion, for disclosure of the identity of the CI and the details of the CI's activity, or, in the alternative, a review by the court in camera of the

---

[10] The district court observed that even if the officer testimony was not lay opinion testimony, it could have been admitted as expert testimony. That statement would be correct so long as the pretrial requirements for the admission of expert testimony were met by the government. If the government had attempted to introduce this testimony as expert testimony, it would have had to disclose the identity of the officers as well as, "among other things, the subject matter on which the witness is expected to testify and a summary of the facts and opinions to which the witness is expected to testify." Valdivia, 680 F.3d at 60 n.21 (Lipez, J., concurring) (citing Fed. R. Civ. P. 26(2) and Fed. R. Crim. P. 16(a)(1)(G), (b)(1)(C)).

documents supporting the application for the search warrants. Relatedly, he argues that the district court erred in refusing to convene a <u>Franks</u> hearing to probe the veracity of the search warrant affidavit. Moon contends that he was unfairly prejudiced by his inability to review the information allegedly supplied by the CI and argues that, at a minimum, the court should have examined the supporting materials to determine whether the informant in fact existed and engaged in controlled buys with him.

## 1. Pretrial Requests

We note first that Moon waived his objection to the district court's refusal to order pretrial disclosure of the informant's <u>identity</u>. In his renewed motion for discovery, Moon stated that he did "not seek the identity of the informant, but only the type of information – promises, rewards, and inducements, convictions, pending cases – that would tend to show unreliability." Similarly, in his motion for in camera review, Moon stated that he was not seeking disclosure of the CI's identity, but urged the court to verify the informant's existence and the facts of the controlled buys. These affirmative statements constitute an "intentional relinquishment" of any claim of error in the district court's pretrial denial of his request for disclosure of the CI's identity. <u>United States</u> v. <u>Millan-Isaac</u>, 749 F.3d 57, 63 (1st Cir. 2014).

Moon has consistently argued, however, that the facts alleged by the government detailing the controlled buys should be examined and evaluated, demanding that such inquiry be performed in a hearing pursuant to Franks and through in camera review of the materials supporting the warrant affidavit. On appeal, he argues that the district court erred in rebuffing both of these procedures. He contends that the court should have demanded reliable proof that the CI existed and the controlled buys in fact occurred.

Under Franks, a defendant may overcome the presumption of validity that surrounds an affidavit in support of a search warrant and obtain an evidentiary hearing if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155-56; see also United States v. McLellan, 792 F.3d 200, 208-09 (1st Cir. 2015). We review for clear error a district court's denial of a Franks hearing. McLellan, 792 F.3d at 208.

Moon attempted to discredit the affidavit's report of the controlled buys by establishing that he was not in Boston on the one date reported with some specificity in the application, i.e., within "the last seventy-two hours." In his own affidavit, Moon

stated that he did not sell heroin to anyone in the Boston area during the three days preceding and including February 4, 2011, the date on which the search warrants issued, and that he had spent "most of my time" in Worcester, Massachusetts, during the first week of February 2011. He argues that his affidavit, together with records from the American Automobile Association ("AAA") showing a request for a tow of the green Mercedes identified in the warrant application, establish that "he was not in town during at least one of the incidents contained in the search warrant."

We find no clear error in the district court's judgment that Moon's proffered evidence did not amount to a "substantial" showing of falsity. The AAA records show only that a call was placed from Worcester on February 4, 2011 -- the date on which the search warrants were sought -- for a tow of the green Mercedes. Those records do not establish that Moon was out of town for the full 72 hours (or any substantial part of that period) before officers filed the warrant application. Likewise, Moon's assertion in his affidavit that he was spending "most" of his time in Worcester during the relevant period does not undermine the allegation in the affidavit that one of the controlled buys of heroin occurred in Boston within 72 hours of the February 4 application. Worcester and Boston are approximately 45 miles

apart,[11] and Moon easily could have been in both cities on the same day.

The factual gap in Moon's attempt to show the affidavit's inaccuracy -- and thus its knowing or reckless falsity -- cannot be filled by his own denial that he sold heroin in Boston within the relevant period. That disclaimer constitutes no more than a conclusory and unsupported allegation that falls well short of the "substantial preliminary showing" necessary to justify a Franks hearing. See United States v. Southard, 700 F.2d 1, 10 (1st Cir. 1983) (upholding rejection of Franks hearing where district court found appellants' flat denials of gambling-related conversations insufficient to meet the "substantial preliminary showing" requirement).

Moon's challenge to the district court's denial of an in camera examination of the evidence supporting the warrant application fails for similar reasons. In a case such as this, where the defendant questions the truthfulness of an affidavit but has not made the "substantial preliminary showing" required by Franks, the district court may hold an in camera proceeding to probe the veracity of the officer and, if necessary, the informant.

---

[11] We take judicial notice of this distance. See Fed. R. Evid. 201(b) (allowing a court to take judicial notice of a fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); see also United States v. Fernandez, 722 F.3d 1, 6 n.1 (1st Cir. 2013).

See United States v. Manning, 79 F.3d 212, 220 (1st Cir. 1996). The judgment of whether to do so, however, is left to the court's discretion. Id. As described above, Moon has failed to make any showing that in camera review would reveal falsity or any evidence of value to his defense. Hence, we find no abuse of discretion in the court's rejection of in camera review. See id. at 221 ("Given the tenuous basis for [the defendant's] challenge to [the detective/affiant's] veracity, the district court's denial of [defendant's] request for an in camera review was well within its discretion.").

### 2. Mid-trial and Post-trial Requests

Moon revisited the CI identity issue during the trial and in his post-verdict motion for new trial, arguing that the government's cross-examination concerning his alleged drug trafficking entitled him to disclosure of the informant's identity and related details. When the government announced its planned line of questioning about the controlled buys, see supra Section II.B, Moon noted that those transactions were disputed. Referencing Federal Rule of Evidence 404(b)(2),[12] he stated that,

---

[12] Pursuant to Federal Rule of Evidence 404(b), evidence of a defendant's "crime, wrong, or other act . . . may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid.

"if the government is allowed to go into any alleged prior transaction, I'm entitled to notice and disclosure of those so I can prepare to rebut them." The court refused to order disclosure of the details of the controlled buys and, as described above, allowed the questioning.

In a motion for new trial after the guilty verdict, Moon renewed his objection to the court's failure to order disclosure of the CI's identity or other information about the controlled buys, arguing that he was unfairly denied the ability "to negate the insinuations made by the government on cross-examination that Mr. Moon was involved in multiple drug transactions prior to his arrest." In denying the motion, the district court stated that the government was not required to disclose the details concerning the CI because it did not rely at trial on information provided by the informant. On appeal, Moon reiterates his contention that his defense was compromised by the court's refusal to order disclosure of the CI's identity and details of the alleged buys.

The government has a qualified privilege to withhold the identity of people who provide law enforcement officers information about criminal acts. See Roviaro v. United States, 353 U.S. 53, 59-60 (1957); United States v. Mills, 710 F.3d 5, 13 (1st Cir. 2013). When a defendant requests disclosure of a confidential informant's identity, the court must determine whether that

_____

404.

information is "relevant and helpful to the defense" or "essential to a fair determination of a ca[se]." Roviaro, 353 U.S. at 60-61. The court also must balance the individual's "right to prepare . . . his defense against the public interest in acquiring needed information and the informant's stake in confidentiality." Mills, 710 F.3d at 14 (quoting United States v. Perez, 299 F.3d 1, 4 (1st Cir. 2002)). The burden is on the defendant to show that "disclosure is essential for an adequate defense," id., and the inquiry is case-specific: "Whether a proper balance renders nondisclosure erroneous must . . . tak[e] into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors," Roviaro, 353 U.S. at 62.

The district court's judgment not to order disclosure of a confidential informant is reviewed for abuse of discretion. United States v. Robinson, 144 F.3d 104, 106 (1st Cir. 1998). We are satisfied that no such abuse occurred in this case. Moon's contention is that, without the CI's identity and some detail about the transactions (e.g., dates and locations), he could not challenge the government's depiction of him as a drug dealer. The government, however, offered no testimony at trial about the controlled buys, either in its case-in-chief or to rebut Moon's denials on cross-examination of his involvement in drug trafficking. The government referred to the transactions only by

asking Moon, during cross-examination, about his conduct.  See supra n.5.

Moon does not explain how he would have used the CI information if the court had ordered it disclosed at that point in the trial.  Cf. Mills, 710 F.3d at 14 ("[A] defendant must spell out how an informer's testimony would help whatever defense theory he pins his hopes on.").  In addition, although Moon's alleged drug trafficking was circumstantially useful to the government, it was not the crime before the jury.  See id. at 14 (noting the importance of disclosure if "the informant is the only person other than the defendant who has firsthand knowledge of the acts underlying the crime charged" or "the only one able to amplify or contradict the testimony of a government witness").  The district court did not abuse its discretion in concluding that Moon had not met his heavy burden to show that disclosure was "essential for an adequate defense."  Id. at 14.

**F.  Sentencing Under Armed Career Criminal Act**

The Probation Office determined that Moon was subject to sentencing as an armed career criminal based on five prior convictions for violent felonies.  Moon's total offense level of 34, when combined with his Criminal History Category of VI, produced a Guidelines sentencing range of 262 to 327 months.  The court sentenced Moon to 220 months' imprisonment and two years of supervised release.

Moon argues that the district court's application of the ACCA violated his right to a jury trial because his prior qualifying convictions were not charged in the indictment or proven to a jury beyond a reasonable doubt. He contends that his predicate convictions are facts that increase the mandatory minimum sentence, and hence constitute "elements" that must have been submitted to the jury. See Alleyne v. United States, 133 S. Ct. 2151 (2013). Moon's contention is without merit. Under now well established law, the fact of a prior conviction need not be proven to a jury beyond a reasonable doubt for sentencing purposes, even when it exposes a defendant to a higher sentence. See Almendarez-Torres v. United States, 523 U.S. 224, 239 (1998); United States v. Almenas, 553 F.3d 27, 31 n.3 (1st Cir. 2009). Accordingly, the district court did not deny Moon his right to a jury trial when it applied the ACCA enhancement.[13]

---

[13] On July 7, 2015, Moon submitted a Motion for Leave to File Supplemental Briefing to address the impact of Johnson v. United States, 135 S. Ct. 2551 (2015), which struck down the residual clause of the ACCA as unconstitutionally vague. In his motion, Moon argued that but for the residual clause of the ACCA, he would not have qualified as an armed career criminal. We denied the motion. Moon has the requisite number of predicate convictions that qualify as violent felonies under the "force or elements clause" of the ACCA, and the residual clause is thus not implicated in this case.

## III.

Having considered each of Moon's claims of error, and finding no basis for disturbing either his conviction or sentence, we affirm the judgment of the district court.

So ordered.