**In re DSC, LTD., Alleged Debtor.**

No. 05–42508.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

June 24, 2005.

Geoffrey L. Silverman, Esq., West Bloomfield, MI, for Debtor.

## OPINION DENYING PETITIONING CREDITORS' MOTION FOR RECONSIDERATION

THOMAS J. TUCKER, Bankruptcy Judge.

This is an involuntary bankruptcy case which was vigorously contested by the al-leged debtor, DSC, Ltd., and which the Court dismissed on April 26, 2005 after conducting a trial and delivering a bench opinion. The Court dismissed the case because it concluded that of the four peti-tioning creditors properly before the Court,[1] only two of them met the neces-sary qualifications to be petitioning credi-tors under 11 U.S.C. § 303(b)(1). (Three qualifying creditors were required in this case.) The case is now before the Court on a motion for reconsideration by two of the petitioning creditors, Crown Enterpris-es, Inc. ["Crown"] and Riverview–Trenton Railroad Company ["RTR"] entitled "Peti-tioning Creditors' Motion for Reconsidera-tion of the Court's April 26, 2005 Opinion and Order" (Docket # 147), filed May 6, 2005. The Court has reviewed and consid-ered the numerous arguments in the mo-tion for reconsideration, and concludes that the motion fails to demonstrate a palpable defect by which the Court and the parties have been misled, and that a differ-ent disposition of the case must result from a correction thereof. *See* Local Rule 9024–1(c). For this reason, the motion will be denied.

One legal issue raised in the motion warrants further discussion. The issue in-volves the interpretation of Bankruptcy Code § 303(c), and relates to the Court's refusal to permit an additional creditor, O'Brien & Gere Engineers Inc., to join as a petitioning creditor. The Court refused that request because O'Brien & Gere did not file a notice of its joinder by February 28, 2005, the deadline set by the Court's Order filed February 18, 2005 (Docket

---

1. The petitioning creditors, for purposes of the trial and the Court's decision on the amended involuntary petition, were Crown Enterprises, Inc., Riverview–Trenton Railroad Company, Voest–Alpine Industries, Inc., and Ebner Furnaces, Inc.

# 19).[2]

In their motion for reconsideration, Crown and RTR argue, among other things, that the Court had no authority to set or enforce *any* deadline for other creditors like O'Brien & Gere to join the involuntary petition. They base their argument on 11 U.S.C. § 303(c), and in particular on the following underlined language in that section:

> After the filing of [an involuntary] petition under this section *but before the case is dismissed or relief is ordered, a creditor* holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, *may join in the petition* with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

(emphasis added).[3]

According to Crown and RTR, this section gives additional creditors an absolute right to join in an involuntary petition at any time before dismissal or entry of an order for relief, even after the start (or conclusion) of trial on the involuntary petition. The Bankruptcy Court may not set and enforce any earlier deadline for joinder, but rather must accept all joining creditors as and whenever they come.

Some further background for discussion of the § 303(c) issue is necessary. This case began on January 27, 2005, with the filing of an involuntary petition for Chapter 7 relief. An amended petition was filed on February 16, 2005. As a result of a conference held with the parties on the record on February 17, 2005, the Court scheduled March 1, 2005 as the trial date on the involuntary petition, and established the day before trial, February 28, 2005, as a deadline for any additional creditors to join the involuntary petition by filing a simple notice of joinder. As required by the Court, the Order establishing the February 28 deadline was served by counsel for Crown and RTR on all creditors, including O'Brien & Gere, by mail on February 18, 2005. (*See* Certificate of Service and Supplemental Service Certificate, filed February 22, 2005 (Docket ## 20, 21).)

Crown and RTR did not object to the February 28 deadline or the March 1 trial date, and in fact wanted the trial to begin and end as soon as possible. When the case was called for trial on the morning of March 1, O'Brien & Gere had not yet filed any notice of joinder. Nor was anyone present on behalf of O'Brien & Gere. Despite this, counsel for Crown and RTR asked the Court to allow O'Brien & Gere to join as petitioning creditors. Counsel for Crown and RTR stated, however, that he had "no squabble" with the Court's having set the February 28 joinder deadline, and acknowledged that O'Brien & Gere had been given reasonable notice and a reasonable time to join the petition. Nor did Crown's and RTR's attorney argue that the Court had lacked authority to set the February 28 deadline for joinder by additional creditors.[4] The Court refused the oral request to permit the late joinder, and the trial proceeded. O'Brien & Gere's

---

2. ("Order for Notification to Creditors of Pending Involuntary Proceedings and Right to Join Proceedings; and Setting Scheduling Dates in Involuntary Proceeding.")

3. Certain amendments to Bankruptcy Code § 303 were made applicable to pending cases, effective April 20, 2005, by the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005." But § 303(c) was not amended.

4. Rather, counsel argued only that the alleged debtor, DSC, would not be prejudiced by the late joinder, a point DSC has disputed.

untimely notice of joinder was filed with the Court later that day (Docket # 61).

■ The Court rejects Crown's and RTR's § 303(c) argument for two separate reasons. First, the Court concludes that Crown and RTR waived the argument because (1) they did not make the argument, and in fact did not object at all, when the Court set the February 28 deadline for joinder by additional creditors, at the February 17 hearing and in the February 18 Order; (2) at the beginning of trial on March 1, when Crown and RTR asked the Court to permit the late joinder of O'Brien & Gere, their counsel said he had "no squabble" with the Court's having set the February 28 joinder deadline, and acknowledged that O'Brien & Gere had been given reasonable notice and a reasonable time to join the petition;[5] and (3) Crown and RTR failed to make their § 303(c) argument at any time until *after* the Court gave its bench opinion on April 26, 2005, after a lengthy trial, ruling that the involuntary petition must be dismissed.

■ Second, the Court disagrees with Crown's and RTR's reading of § 303(c). The phrase "but before the case is dismissed or relief is ordered," in § 303(c) merely sets an absolute, outside limit on the time within which certain qualifying creditors may join an involuntary petition. It means that a would-be joining creditor must join, if at all, before the Court has dismissed an involuntary bankruptcy petition.

■ But § 303(c) does not prohibit the Court from setting an earlier deadline for additional creditors to join. In setting an earlier, pre-trial deadline in this case, the Court simply exercised its normal case management authority, in the interest of orderly, fair, and efficient proceedings. The Court clearly has such authority, under the Bankruptcy Code and applicable rules.[6] *Cf. Efron v. Gutierrez,* 226 B.R. 305, 316 (D.P.R.1998)(affirming the bankruptcy court's denial of a motion for an extension of time to conduct discovery of the alleged debtor's creditors and to join additional petitioning creditors, and holding that "the

---

**5.** Thus, Crown and RTR did *not* argue that in setting the February 28 deadline the Court violated Fed.R.Bankr.P. 1003(b), which in certain circumstances requires the Court to "afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon." Nor do they make any such argument now, in their reconsideration motion.

**6.** First, Fed.R.Civ.P. 16 applies in involuntary bankruptcy cases, by virtue of Fed.R.Bankr.P. 1018 and 7016. Rule 16 authorized the Court's February 18 Order setting the February 28, 2005 deadline for additional creditors to join the involuntary petition. The Order resulted from a conference the Court held with the parties on the record on February 17, 2005. Civil Rule 16(b) allows the Court to "enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings;" and provides that such a scheduling order "may also include ... (6) any other

matters appropriate in the circumstances of the case."

Second, the Court also had authority to issue this scheduling order, and set the February 28 deadline, under the following provisions of 11 U.S.C. § 105(a) and (d):

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.......

(d) The court, on its own motion or on the request of a party in interest, may—

(1) hold a status conference regarding any case or proceeding under this title after notice to the parties in interest; and

(2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically ....

Bankruptcy Court properly exercised its discretion and case management power"). Such case management authority is always important, but its importance is enhanced in involuntary bankruptcy proceedings, because the Court is required to expedite such proceedings. Fed. R.Bankr.P. 1013(a) states:

> The court shall determine the issues of a contested [involuntary] petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order.

In this case, not only did Bankruptcy Rule 1013(a) require that the case be handled expeditiously, but also Crown and RTR themselves were constantly pushing for a determination on the involuntary petition as soon as possible, stressing the urgency of obtaining an order for relief against DSC, Ltd.

Under the exigent circumstances of this case, the Court set a deadline of February 28, 2005 for any other creditors to join in the involuntary petition. That was the day before the beginning of trial on the involuntary petition. In the Court's view, it would have been unfair to the alleged debtor, DSC Ltd., and not conducive to an orderly trial, to allow joinder of new creditors at any date later than February 28— *i.e.*, after trial had already begun.

The view of § 303(c) that Crown and RTR now urge would allow for some intolerable results. Consider, for example, the following scenario: (1) petitioning creditors go to trial on their involuntary petition against the alleged debtor; (2) at the conclusion of trial, the Court delivers a bench opinion finding that there are fewer than three petitioning creditors who qualify as required under § 303(b)(1), so that the case must be dismissed; (3) before the Court enters its written order dismissing the case for this reason, one or more additional creditors "join" in the involuntary petition. At that point, the Court would be required to toss aside the bench ruling it just made, and reopen the trial that just concluded, or hold a second trial. And if the Court thereafter concluded that there still were not enough qualifying creditors joined in the involuntary petition, still more creditors could "join" and yet a third evidentiary proceeding/trial could be necessary. And on and on. Such a state of affairs obviously would be untenable, grossly inefficient and time-consuming, unfair to the alleged debtor, and very disruptive to the Court's ability to conduct business for the rest of the cases on its docket. And it would be inconsistent with the command of Bankruptcy Rule 1013(a) that the Court "determine the issues of a contested [involuntary] petition at the earliest practicable time...."

While the nightmarish scenario described above is not what happened in this case, it illustrates why Crown's and RTR's interpretation of § 303(c) must be wrong. Congress simply cannot have intended in § 303(c) to render bankruptcy courts powerless to prevent chaos in involuntary cases.

For the reasons stated in this Opinion, the motion for reconsideration will be denied. The Court will enter a separate Order.