# United States Court of Appeals
## For the First Circuit

No. 24-9002

IN RE: HH TECHNOLOGY CORP.,

Involuntary Debtor.

PCC ROKITA, S.A.; SHANGHAI MORIMATSU CHEMICAL
EQUIPMENT CO., LTD.; DFT PROPERTIES, LLC,

Appellants,

v.

HH TECHNOLOGY CORP.; CRAIG R. JALBERT, as Assignee
for the Benefit of Creditors of HH Technology Corp.,

Appellees.

APPEAL FROM THE UNITED STATES BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Montecalvo, Lipez, and Aframe,
Circuit Judges.

Ilyas J. Rona, with whom Jin-Ho King and Milligan Rona Duran
& King LLC were on brief, for appellants.

Francis C. Morrissey, with whom Morrissey, Wilson &
Zafiropoulos, LLP was on brief, for appellee HH Technology Corp.

D. Ethan Jeffrey and Murphy & King, P.C. on brief for appellee
Craig R. Jalbert, as Assignee for the Benefit of Creditors of HH
Technology Corp.

July 24, 2025

**AFRAME, Circuit Judge.** Debtors initiate most bankruptcy cases. But sometimes, creditors are the initiators. Creditors initiate a bankruptcy case by filing a so-called involuntary petition. See 11 U.S.C. § 303; Fed. R. Bankr. P. 1003. A single creditor may file an involuntary petition if the debtor against whom the petition is filed has fewer than twelve qualified creditors. See 11 U.S.C. § 303(b)(2). If, however, the debtor has twelve or more qualified creditors, at least three creditors must file or subsequently join the petition. See id. § 303(b)(1), (c).

This appeal presents two principal questions. The first is whether a bankruptcy court may establish a deadline for creditors to join a pending involuntary petition. The second is how defenses to the avoidability of a pre-petition preferential transfer must be raised and proved. See 11 U.S.C. §§ 303(b)(2); 547(c). The latter question matters because a creditor who receives an avoidable transfer from the debtor is not a qualified creditor for purposes of section 303(b). Id. § 303(b)(2).

We conclude that the bankruptcy court may set a deadline for creditors to join a pending involuntary petition. We also conclude that a putative debtor need not plead defenses to the avoidability of a pre-petition preferential transfer in its answer to the involuntary petition and that any error here in requiring

- 3 -

the creditors to disprove defenses to avoidability was harmless. As a result, we affirm the dismissal of the involuntary petition.

I.

In December 2021, the United States District Court for the District of Massachusetts partially recognized a multi-million-dollar foreign judgment obtained by PCC Rokita, S.A. ("PCC Rokita") against HH Technology Corp. ("HHT" or "Involuntary Debtor"). See PCC Rokita, SA v. HH Tech. Corp., 575 F. Supp. 3d 227 (D. Mass. 2021). Shortly thereafter, HHT executed a trust agreement and an assignment for the benefit of creditors to wind itself down. See Mass. Gen. Laws ch. 203, §§ 40-41 (2024). HHT's assignee ("Assignee") accepted the assignment and began to wind down the company.

About two months later, PCC Rokita petitioned the United States Bankruptcy Court for the District of Massachusetts to involuntarily place HHT into Chapter 7 bankruptcy. See 11 U.S.C. § 303. The Assignee moved to dismiss the involuntary petition and submitted with its motion a list of fifteen creditors of the Involuntary Debtor that the Assignee contended were qualified under section 303(b) of the Bankruptcy Code. See 11 U.S.C. § 303(b); Fed. R. Bankr. P. 1003, 1011. For the purposes of section 303(b), a creditor qualifies if the creditor is neither an employee nor an insider of the putative debtor and holds a claim that is (1) "not contingent as to liability or the subject of a

- 4 -

bona fide dispute as to liability or amount"; and (2) not avoidable under certain sections of the Bankruptcy Code. 11 U.S.C. § 303(b). Because a debtor with twelve or more qualified creditors may be involuntarily petitioned into bankruptcy only by three or more of those creditors, id. § 303(b)(1), the Assignee submitted that PCC Rokita's petition was ineffective.[1]

Together with its motion to dismiss, the Assignee filed an answer to the petition. The answer asserted two affirmative defenses. The first defense was based on the same creditor-numerosity grounds as the Assignee's motion. The second urged that dismissal or abstention would best serve the interests of creditors. See 11 U.S.C. § 305(a)(1) ("The court . . . may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension . . . .").

In response to the Assignee's motion and answer, the bankruptcy court issued an order setting May 23, 2022, as the deadline for additional creditors to join the involuntary petition. See 11 U.S.C. § 303(c); Fed. R. Bankr. P. 1003. The

---

[1] The Involuntary Debtor later joined the Assignee's motion and, together with the Assignee, has defended the dismissal of the involuntary petition. When discussing the motion and the subsequent appeals, we will refer generally only to the Assignee.

order provided that, absent good cause, the court would deny motions to join the petition filed after the joinder deadline.

Several days before the joinder deadline was set to expire, and with no other creditors having joined its involuntary petition, PCC Rokita moved for an extension. One additional creditor, Shanghai Morimatsu Chemical Equipment Co. ("Morimatsu"), subsequently joined; however, the deadline came and went without a third creditor joining the petition. Shortly thereafter, the bankruptcy court denied PCC Rokita's motion.

The bankruptcy court then scheduled an evidentiary hearing on the Assignee's motion to dismiss for July 27, 2022. In the interim, it authorized PCC Rokita and Morimatsu to take discovery on how many of the Involuntary Debtor's creditors were qualified under section 303(b)(2). In the ensuing weeks, PCC Rokita and Morimatsu served discovery on all of the Involuntary Debtor's disclosed domestic creditors, as well as on the Assignee and the Involuntary Debtor itself. During this period, the Assignee disclosed several more creditors of the Involuntary Debtor, bringing the total number of putatively qualified creditors to approximately twenty.

On July 16, 2022, DFT Properties, LLC ("DFT Properties" and, with PCC Rokita and Morimatsu, "Petitioning Creditors") moved to join the involuntary petition. DFT Properties explained that it had recently learned that the Assignee had not obtained the

necessary assents to make the assignment valid under Massachusetts law, see Mass. Gen. Laws ch. 203, § 41 (2024); that the Involuntary Debtor had made a significant number of large payments shortly before the petition's filing, some of which were preferential; that the Assignee did not intend to recover those payments; and that one of the Involuntary Debtor's principals had formed a new company that appeared to continue the Involuntary Debtor's business. DFT Properties submitted that, based on these facts, it had decided that its interests would be better protected in bankruptcy proceedings. The bankruptcy court denied the motion to join, reasoning that DFT Properties had "made a deliberate decision not to join the petition" before the joinder deadline or to seek an extension to permit it to ascertain additional information about the Involuntary Debtor's finances. Order, In re HH Tech. Corp., No. 22-10156 (Bankr. D. Mass. July 18, 2022), ECF No. 66.

Beginning on July 27, 2022, the bankruptcy court held an evidentiary hearing on the Assignee's motion to dismiss. At the beginning of the hearing, the Petitioning Creditors stated their position "that the hearing d[id] not need to go forward" because the court "lack[ed] authority to deny" DFT Properties' joinder motion. In support, the Petitioning Creditors cited Guterman v. C.D. Parker & Co., Inc., 86 F.2d 546 (1st Cir. 1936), where, construing a since-repealed provision of the National Bankruptcy Act of 1898, we stated that creditors could join an involuntary

- 7 -

petition "at any time." The bankruptcy court declined to revisit its denial of DFT Properties' joinder motion, and the hearing proceeded with testimony from the Assignee and the Involuntary Debtor's principals as well as the introduction of other evidence.

After post-hearing briefing and several stipulations by the parties about the qualifications of certain creditors, the Involuntary Debtor claimed fifteen qualified creditors, twelve of whom PCC Rokita and Morimatsu contended were unqualified for various reasons. In a memorandum opinion, the bankruptcy court held that the Petitioning Creditors had failed to prove that any of the twelve challenged creditors were unqualified. See In re HH Tech. Corp., 649 B.R. 365, 371-81 (Bankr. D. Mass. 2023). The bankruptcy court then dismissed the involuntary petition on the ground that the Involuntary Debtor had twelve or more qualified creditors, but there were only two petitioning creditors -- one short of the required three. Order, In re HH Tech. Corp., No. 22-10156 (Bankr. D. Mass. Mar. 31, 2023), ECF No. 113; see 11 U.S.C. § 303(b).

The Petitioning Creditors timely appealed to the Bankruptcy Appellate Panel for the First Circuit ("BAP"), which affirmed. See In re HH Tech. Corp., 659 B.R. 788 (B.A.P. 1st Cir.

2024).  The Petitioning Creditors then timely appealed to this Court.[2]  We have jurisdiction under title 28, section 158(d)(1).

## II.

The Petitioning Creditors contend that the bankruptcy court erred in two ways.  First, they argue that section 303(c) affords creditors the right to join an involuntary petition at any time before its dismissal or the entry of an order for relief. Because DFT Properties sought to join the petition before its dismissal, the Petitioning Creditors submit that the bankruptcy court had to allow DFT Properties' joinder.  Second, the Petitioning Creditors assert that several of the bankruptcy court's rulings regarding creditor qualifications were incorrect, as was its resultant finding that the Involuntary Debtor had twelve or more creditors qualified under section 303(b).

In the Petitioning Creditors' view, each error separately requires reversal.  If DFT Properties had been permitted to join the petition, there would have been three petitioning creditors, and the question of whether the Involuntary Debtor had twelve or more qualified creditors would have been irrelevant. See 11 U.S.C. § 303(b).  If, on the other hand, the Involuntary

---

    2    Although the Petitioning Creditors' appeal is taken from the BAP's decision, we "review the bankruptcy court ruling[s] directly," with the BAP's opinion "serving more or less like an amicus brief (albeit one that can be extremely helpful)." Popular Auto, Inc. v. Reyes-Colon (In re Reyes-Colon), 922 F.3d 13, 17-18 (1st Cir. 2019).

Debtor had fewer than twelve qualified creditors, one petitioning creditor would have sufficed, and the denial of DFT Properties' joinder motion would have been immaterial.  See id.

## A.

We begin with the Petitioning Creditors' argument that the bankruptcy court incorrectly denied DFT Properties' joinder motion.  This argument rests principally on section 303(c) of the Bankruptcy Code, which provides, in pertinent part, that "[a]fter the filing of [an involuntary petition] but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent . . . may join in the petition."  11 U.S.C. § 303(c).  The Petitioning Creditors contend that this provision gave DFT Properties the right to join the involuntary petition at any time while it was pending.

## 1.

Before turning to the Petitioning Creditors' argument, it is helpful to review several undisputed points.  First, it is clear from section 303(c)'s text and our precedent that the statute gives creditors the right to join a pending involuntary petition. See LaRoche v. Amoskeag Bank (In re LaRoche), 969 F.2d 1299, 1305-06 (1st Cir. 1992); see also Popular Auto, 922 F.3d at 15-16.  It does so by using the sort of language commonly employed by the Bankruptcy Code to refer to the period during which an involuntary petition is pending.  Compare 11 U.S.C. § 303(c), with id.

§§ 303(g), 502(f), 549(b), and Fed. R. Bankr. P. 2001(a). An involuntary petition is pending from its "filing," 11 U.S.C. § 303(c), until the case is dismissed, which disposes of the petition, id., or an order for relief is entered, which adjudicates it, see HealthTrio, Inc. v. Centennial River Corp. (In re HealthTrio, Inc.), 653 F.3d 1154, 1157 (10th Cir. 2011) ("[A]n order for relief is 'the equivalent of an adjudication under the Bankruptcy Act of 1898,' and therefore is 'a judgment in rem, a conclusive determination of the debtor's status in bankruptcy.'" (quoting Mason v. Integrity Ins. Co. (In re Mason), 709 F.2d 1313, 1315 (9th Cir. 1983))). See generally 2 Collier on Bankruptcy ¶¶ 303.22-.26 (Richard Levin & Henry J. Sommer eds., 16th ed., 2025 update) [hereinafter Collier]. After an order for relief enters, the bankruptcy case continues, but the petition, having been adjudicated, is no longer pending. See In re Alpine Lumber & Nursery, 13 B.R. 977, 979 (Bankr. S.D. Cal. 1981) ("An involuntary case is in essence a civil suit requesting a judgment that an order for relief be entered . . . ."); see also Off. Form 205, Involuntary Petition Against a Non-Individual, 3 (requesting "that an order for relief be entered against the debtor"). The reorganization or liquidation of the debtor's estate which follows

is essentially the execution of the order for relief.[3]  Cf. Bank of Marin v. England, 385 U.S. 99, 108 (1966) (Harlan, J., dissenting) (noting that the entry of an order for relief, then referred to as an "adjudication," "signal[led] the beginning of bankruptcy administration"); Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 306-08 (1911) (similar).

Second, a non-party with a statutory right to intervene in a civil action does not ordinarily possess an ancillary right to intervene at any time.  See Cameron v. EMW Women's Surgical Ctr., P.S.C., 595 U.S. 267, 279 (2022) ("Timeliness is an important consideration in deciding whether intervention should be allowed . . . ."); Charles A. Wright et al., 7C Fed. Prac. & Proc. Civ. § 1916 (3d ed., May 2025 update).  Rather, Federal Rule of Civil Procedure 24 provides that a non-party with a right to intervene must do so "[o]n timely motion."  Fed. R. Civ. P. 24(a).  And, finally, the Federal Rules of Bankruptcy Procedure make Rule 24 and its timely intervention requirement applicable to proceedings contesting an involuntary bankruptcy petition such as these.[4]  See Fed. R. Bankr. P. 1018, 7024; Fed. R. Civ. P. 24(a)(1).

---

[3]    Creditors may participate in these subsequent proceedings pursuant to other statutes and rules.  See, e.g., 11 U.S.C. § 501(a); Fed. R. Bankr. P. 3002.

[4]    Although section 303(c) speaks in terms of "joining" an involuntary petition, the procedure contemplated is more akin to intervention under Rule 24 than party joinder under Rules 19(a) and 20(a)(1).  See Liberty Tool, & Mfg. v. Vortex Fishing Sys.,

- 12 -

**2.**

With those points in mind, we return to the dismissal of DFT Properties' joinder motion. The question which we consider is whether, when it comes to creditor joinder, section 303(c) displaces Rule 24's timely intervention requirement and gives creditors the right to join a pending involuntary petition at any time.[5] See Smith v. U.S. Bank N.A. (In re Smith), 999 F.3d 452, 456 (6th Cir. 2021) ("[A]ny conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code." (quoting United States v. Chavis (In re Chavis), 47 F.3d 818, 822 (6th Cir. 1995))); cf. Law v. Siegel, 571 U.S. 415, 420-21 (2014) (stating that the bankruptcy court cannot "override explicit mandates . . . of the Bankruptcy Code" pursuant to its powers under

---

Inc. (In Re Vortex Fishing Sys., Inc.), 277 F.3d 1057, 1061 (9th Cir. 2002); McGinnis v. Jenkins & Assocs. (In re McGinnis), 296 F.3d 730, 732 (8th Cir. 2002); In re Kidwell, 158 B.R. 203, 212 (Bankr. E.D. Cal. 1993).

[5] The Assignee contends that the Petitioning Creditors have forfeited this argument by failing to timely raise or adequately substantiate it below. We disagree. DFT Properties sought to join the petition before its dismissal; to the extent an unqualified right to join a pending petition at any time exists, it was timely exercised. See United States v. Cezaire, 939 F.3d 336, 339 n.2 (1st Cir. 2019) ("Forfeiture is the failure to make the timely assertion of a right . . . ." (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 147 (3d Cir. 2017))). And, although DFT Properties' joinder motion is somewhat difficult to parse on this point, at the hearing the Petitioning Creditors made sufficiently clear their position that under our precedent, the bankruptcy court lacked the power to dismiss the petition.

title 11, section 105(a) (quoting Collier ¶ 105.01)). Focusing on the clause "[a]fter the filing of [the petition] but before the case is dismissed or relief is ordered," 11 U.S.C. § 303(c), the Petitioning Creditors argue that section 303(c) specifies that creditors may join an involuntary petition at any time that it is pending, and therefore the bankruptcy court may not set any earlier joinder deadline.

We do not agree. Where the Bankruptcy Code intends to give creditors a right to take action at any time during an involuntary petition's pendency, it uses additional language to make that intention clear. Section 303(g), for instance, provides that the court may order the appointment of an interim trustee upon the request of a party in interest "[a]t any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case." 11 U.S.C. § 303(g) (emphasis added). This practice is not unique to the Code's provisions concerning involuntary petitions; rather, the use of "at any time" or similar language to provide that a specified action may be taken throughout a statutorily prescribed period appears at various other places in the Code. See, e.g., id. §§ 365(d)(2), 942, 1105, 1127(e), 1193(a), 1223(a), 1229(a), 1307(d), 1323(a), 1329(a), 1330(a).

Yet, despite this well-established practice and the use of "at any time" in the nearby section 303(g), Congress did not

include similar language in section 303(c).  Compare 11 U.S.C.
§ 303(c), with id. § 303(g).  Instead, it referred to the period
during which an involuntary petition is pending and provided that
creditors "may" join the petition without further specifying when
that right could be exercised.  Id. § 303(c).  "[I]t is generally
presumed" that, where "Congress include[d] particular language in
one section of a statute but omit[ted] it in another section of
the same" statute, "the disparate inclusion or exclusion" was
intentional.  Nken v. Holder, 556 U.S. 418, 430 (2009) (quoting
INS v. Cardoza-Fonseca, 480 U.S. 421, 432 (1987)).  Thus, the
omission of "at any time" or similar language from section 303(c)
strongly suggests that section 303(c) was not intended to give
creditors the right to join a pending involuntary petition at any
time.  See id.

Arguing otherwise, the Petitioning Creditors rely on our
decision in Guterman and the Supreme Court's decision in Canute
Steamship Co. v. Pittsburgh & West Virginia Coal Co., 263 U.S. 244
(1923), both of which stated that creditors could join pending
involuntary petitions "at any time."  See Canute, 263 U.S. at 248-
49 (quoting National Bankruptcy Act of 1898, § 59f, 30 Stat. 544,
562 (1898) (repealed 1979)); Guterman, 86 F.2d at 549.  But neither
Canute nor Guterman helps the Petitioning Creditors.  Both
decisions construed section 59f of the National Bankruptcy Act of
1898, which provided that creditors could "at any time enter their

appearance and join in the petition, or file an answer and be heard in opposition to the prayer of the petition." Canute, 263 U.S. at 247 (emphasis added) (quoting National Bankruptcy Act of 1898, § 59f, 30 Stat. 544, 562 (1898) (repealed 1979)); see Guterman, 86 F.2d at 549-50. The Bankruptcy Reform Act of 1978 repealed the National Bankruptcy Act of 1898, and therefore section 59f is no longer operative. See Pub. L. 95-598, § 401(a), 92 Stat. 2549, 2682. It was replaced by section 303(c), see Pub. L. 95-598, § 101, 92 Stat. 2549, 2559, which, as noted, does not provide a right to join "at any time," even though the phrase was used in section 303(g), see Pub. L. 95-598, § 101, 92 Stat. 2549, 2559, and elsewhere in the newly enacted Bankruptcy Code, see, e.g., Pub. L. 95-598, § 101, 92 Stat. 2549, 2561, 2572, 2575 (codified at 11 U.S.C. §§ 305(a), 363(e), 365(b)(2)(A)).

The Petitioning Creditors contend that, despite declining to retain the phrase "at any time" in section 303(c), Congress meant to make no change from section 59f of the National Bankruptcy Act. But when Congress "amend[s] a statute, we presume it intends its amendment to have real and substantial effect." Pierce Cnty. v. Guillen, 537 U.S. 129, 145 (2003) (quoting Stone v. INS, 514 U.S. 386, 397 (1995)). Nothing has been presented to undermine that presumption here. While the legislative history of the Bankruptcy Reform Act shows that Congress intended to retain certain aspects of prior bankruptcy law, it does not suggest that

a right to join a pending involuntary petition at any time was among them.  See, e.g., S. Rep. 95-989, at 32-33 (1978); H.R. Rep. 95-595, at 322-23 (1978).  And, as already discussed, ordinary methods of statutory interpretation support the conclusion that it was not.  See Nken, 556 U.S. at 430.

Although the Petitioning Creditors cite numerous post-Code decisions regarding joinder under section 303(c), none hold that a bankruptcy court is prohibited from setting a joinder deadline.[6]  A 1983 advisory committee note to the then newly enacted

---

[6]     Although the Bankruptcy Reform Act was enacted in 1978, it was not until 1983 that new bankruptcy rules were promulgated by the Supreme Court, see 461 U.S. at 973-1093, and thereafter adopted with only slight changes by Congress, see Pub. L. 98-91, 97 Stat. 607.  In the interim, bankruptcy rules corresponding to the repealed bankruptcy laws applied "to the extent not inconsistent" with the amendments made by the Bankruptcy Reform Act.  See Pub. L. 95-598, § 405(d), 92 Stat. 2549, 2685. (Suggested interim rules were also promulgated by the advisory committee, but were not binding and did not speak to creditor joinder.  See 11 U.S.C. app. Rule 1003 (1982).)  Rule 104(e) of these old rules permitted creditors to join an involuntary petition "at any time before its dismissal," which was consistent with the old section 59f of the National Bankruptcy Act, but not the new section 303(c).  See 11 U.S.C. app. Rule 104(e) (1976).

The Petitioning Creditors refer in their brief to several decisions issued during that period which, citing Rule 104(e), appear to have assumed that creditors could join an involuntary petition at any time.  See Jefferson Tr. & Savings Bank v. Rassi (In re Rassi), 701 F.2d 627, 629 n.2 (7th Cir. 1983); In re N. Cnty. Chrysler Plymouth, Inc., 13 B.R. 393, 399-400 (Bankr. W.D. Mo. 1981); see also In re Elsub Corp., 70 B.R. 797, 813-14 (Bankr. D.N.J. 1987) (citing N. Cnty. Chrysler, 13 B.R. at 399-400).  Since these decisions seem not to have appreciated the inconsistency between Rule 104(e) and the new section 303(c), they are of limited utility as it concerns when creditors may join an involuntary petition.

Federal Rules of Bankruptcy Procedure likewise fails to tip the scales in the Petitioning Creditors' favor. See Fed. R. Bankr. P. 1003 advisory committee's note to 1983 amendment; see also In re Will Foods, No. 17-10754, 2017 WL 3084407, at *3 (Bankr. W.D.N.Y. July 19, 2017) (quoting the same advisory committee note). Although the advisory committee note states that section 303(c) permitted creditors to join an involuntary petition "at any time," the phrase "at any time" does not appear in the 1983 Rule itself or in any of its amendments, see Bankruptcy Rule 1003(d) (1983) (current version at Bankruptcy Rule 1003(c)); indeed, the relevant portion of the Rule provides only that the bankruptcy court "must allow a reasonable time for other creditors to join the petition before holding a hearing on it," Fed. R. Bankr. P. 1003(c). Given the language of the Rule itself, it is not necessarily clear that the advisory committee meant to suggest that the Rule provided an entirely unrestricted right to join a pending involuntary petition. And, in any event, such a construction would be inconsistent with the operative provision of the Bankruptcy Code for the reasons already explained. Cf. Roy v. Canadian Pac. Ry. Co. (In re Lac-Mégantic Train Derailment Litig.), 999 F.3d 72, 82 (1st Cir. 2021) ("[A]ny conflict between a statutory provision and the Bankruptcy Rules would have to be resolved in favor of the former.").

Finally, "[i]n addition to its textual implausibility," the interpretation of section 303(c) advanced by the Petitioning Creditors would have "curious practical consequences." Vaden v. Discover Bank, 556 U.S. 49, 65 (2009). Bankruptcy courts enjoy substantial case-management authority. See, e.g., 11 U.S.C. § 105(d); Fed. R. Bankr. P. 9029(c); see also Smith v. Terry (In re Salubrio, L.L.C.), No. 23-50288, 2024 WL 1795773, at *2 (5th Cir. Apr. 25, 2024); Kreisler v. Goldberg, 478 F.3d 209, 215 (4th Cir. 2007). That authority, important in all bankruptcy proceedings, is essential when a bankruptcy court faces an involuntary petition: the stakes are high, and time is of the essence. See In re Forever Green Ath. Fields, Inc., 804 F.3d 328, 335 (3d Cir. 2015) ("[T]he filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor . . . ." (alteration in original) (quoting In re Reid, 773 F.2d 945, 946 (7th Cir. 1985))); Fed. R. Bankr. P. 1013(a)(1) (requiring that a bankruptcy court "rule on the issues presented" by a contested involuntary petition "at the earliest practicable time"). Yet the Petitioning Creditors' interpretation of section 303(c) would divest bankruptcy courts of an important case-management tool at a critical stage in an involuntary case. See In re DSC, Ltd., 325 B.R. 741, 745 (Bankr. E.D. Mich. 2005). We doubt that Congress intended such a result. See Riverview Trenton

R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.), 486 F.3d 940, 948 (6th Cir. 2007).

Because the Petitioning Creditors challenge only the bankruptcy court's authority under the Bankruptcy Code to set a joinder deadline, we conclude our analysis here.[7] As a result, we have no occasion to consider the circumstances under which the denial of a joinder motion filed after a joinder deadline has passed might constitute an abuse of discretion. See Cameron, 595 U.S. at 279 ("[T]imeliness is to be determined from all the circumstances . . . ." (quoting NAACP v. New York, 413 U.S. 345, 366 (1973))).

## III.

We next address whether the failure of a third creditor to have joined the involuntary petition before the joinder deadline required the petition's dismissal. See 11 U.S.C. § 303(b). This

---

[7] In their briefs, the Petitioning Creditors assert that there was "no reasonable basis" to set a later joinder deadline for belatedly disclosed creditors, as the bankruptcy court did here, yet deny DFT Properties' joinder motion, which was filed before the later deadline. They also state that DFT Properties had good reason for its belated joinder. However, the briefs do not assert that the bankruptcy court abused its discretion by failing to allow DFT Properties' belated joinder. And counsel for the Petitioning Creditors confirmed at oral argument that they challenged the denial of DFT Properties' joinder motion based only on the bankruptcy court's inability to set a joinder deadline at all because of section 303(c). Any argument that the bankruptcy court abused its discretion by denying DFT Properties' motion for belated joinder is therefore waived. See W.R. Cobb Co. v. V.J. Designs, LLC, 130 F.4th 224, 239 (1st Cir. 2025).

question turns on whether the Involuntary Debtor had twelve or more creditors qualified under section 303(c). See id. If so, three creditors would have needed to join the petition, id. § 303(b)(1); if not, a single petitioning creditor -- here, PCC Rokita -- would have sufficed, id. § 303(b)(2).

Creditors may be unqualified for the purposes of section 303(b) for several reasons. See 11 U.S.C. § 303(b). One reason is a creditor's receipt of a transfer from the debtor that is avoidable under certain sections of the Bankruptcy Code. See id. § 303(b)(2). Below, the Petitioning Creditors sought to disqualify certain creditors for having received preferential pre-petition transfers that the Petitioning Creditors claimed were avoidable under section 547. See In re HH Tech., 649 B.R. at 375-81; see also 11 U.S.C. § 303(b) (excluding "any transferee of a transfer that is voidable under section . . . 547"). Section 547(b) specifies the conditions under which preferential pre-petition transfers may be avoided. See 11 U.S.C. § 547(b). Section 547(c), in turn, sets up various defenses to avoidability. See id. § 547(c). If a defense applies, the transfer is not avoidable, and the creditor is not excludable under section 303(b) for having received it. See Williams v. Roos, No. 19-cv-01674, 2021 WL 234498, at *3 (W.D. La. Jan. 22, 2021). But see In re Blaine Richards & Co., 10 B.R. 424, 428 (Bankr. E.D.N.Y. 1981) (finding a creditor not to be qualified upon a prima facie showing

of the creditor's receipt of a transfer avoidable under section 547).

The bankruptcy court declined to exclude the creditors challenged by the Petitioning Creditors for having received transfers that were avoidable under section 547. See In re HH Tech., 649 B.R. at 375-81. In doing so, the court considered whether defenses to the avoidability of the transfers in question applied, see id. at 373, and in several instances concluded that the Petitioning Creditors had failed to meet their burden of proving that one or more such defenses did not apply, see id. at 375-77, 379-80.

The Petitioning Creditors argue that the bankruptcy court erred in three ways. First, relying on In re Blaine Richards, 10 B.R. at 428, they contend that only a prima facie showing of an avoidable transfer is required to disqualify a creditor, and defenses to avoidability need not be considered. But section 303(c) disqualifies a "transferee of a transfer that is voidable under section . . . 547." 11 U.S.C. § 303(b). And a transfer is not avoidable under section 547 if a section 547(c) defense applies. See id. § 547(c); Williams, 2021 WL 234498, at *3.

Second, the Petitioning Creditors contend that the bankruptcy court should not have considered section 547(c) defenses because the Assignee failed to assert them in its answer

to the involuntary petition. But section 547(c) does not provide a defense to an involuntary petition; instead, it enumerates defenses to the avoidability of certain pre-petition transfers. See 11 U.S.C. 547(c). The defense to the petition was creditor numerosity, see id. § 303(b), which the Assignee timely asserted. Thereafter, it was incumbent upon the Petitioning Creditors to challenge enough creditors to reduce the number qualified under section 303(b) to fewer than twelve. See id. The section 547(c) defenses became pertinent only after the Petitioning Creditors chose to challenge the qualification of certain creditors because of their alleged receipt of transfers avoidable under section 547. And, at that point, the defenses were promptly raised by the Assignee. The section 547(c) defenses were therefore properly considered.

Third, the Petitioning Creditors argue that the bankruptcy court erred by requiring them to disprove the applicability of section 547(c) defenses to an otherwise avoidable transfer in order to disqualify a creditor. See In re HH Tech., 649 B.R. at 373. They contend that the court instead should have made the Assignee prove that one or more of the defenses applied to prevent the creditor's disqualification. In a normal avoidance action under section 547, the burden to prove affirmative defenses to avoidability would rest with the transferee creditor, i.e., the party seeking to retain the transfer. See 11 U.S.C. § 547(g); In

- 23 -

re Williams, 636 B.R. 720, 737-38 (Bankr. W.D. La. 2021) ("In the ordinary case, the creditor alleged to have received the preferential transfer would have the burden of proving the affirmative defense of ordinary course."). In the section 303(b) inquiry, the Assignee stands in the shoes of the transferee creditor, and the Petitioning Creditors stand in the shoes of the trustee seeking to avoid the transfer. See In re Williams, 636 B.R. at 737-38. Understood accordingly, it would seem correct that the Assignee, not the Petitioning Creditors, would have the burden of proof with respect to section 547(c) defenses.[8] Id. at 738 ("For purposes of § 303(b)(2), the Debtor has th[e] burden" of proving affirmative defenses to avoidability).

A potential complication, however, arises from section 547(b), which requires that the trustee -- in whose shoes, to remind, stand the Petitioning Creditors -- exercise "reasonable due diligence in the circumstances of the case and tak[e] into account a party's known or reasonably knowable affirmative

---

[8]    Contrary to the Assignee's suggestion, our decision in Popular Auto did not reach or resolve this question. See Popular Auto, 922 F.3d at 19-20 ("The burden of proof with respect to establishing that the Appellee had less than 12 creditors rested with the petitioning creditor. Once the debtor answers that there are more than 12 creditors and files a list in compliance with Bankruptcy Rule 1003(b), the petitioning creditors bear the burden to put the debtor to the test." (quoting Banco Popular de P.R. v. Colon (In re Colon), Nos. 07-053, 06-04675, 2008 WL 8664760, at *4 (B.A.P. 1st Cir. Nov. 21, 2008))). The only other decision cited by the Assignee on this point, Mont. Dep't of Rev. v. Blixseth, 581 B.R. 882, 893 (D. Nev. 2017), did not either.

defenses" before commencing an avoidance action under section 547. 11 U.S.C § 547(b); see also HH Tech Corp., 649 B.R. at 373. The language is a recent addition to section 547, having been adopted by the Small Business Reorganization Act of 2019. See Pub. L. 116-54, § 3(a), 133 Stat. 1085; see also Collier ¶ 547.02A (concluding that "[t]he most plausible" reason for the addition was to address the problem of "preference mills" -- entities that indiscriminately "pursue[d] preference actions" on behalf of the trustee, settling many for nuisance value and taking "a percentage of the recovery" for themselves).

Whether section 547(b) has created a new diligence element for a section 547 preferential-transfer claim remains unsettled, as does how such a diligence element would be proved. Compare Pinktoe Liquidation Tr. v. Dellal (In re Pinktoe Tarantula Ltd.), No. 18-10344, Adv. Pro. No. 20-50597, 2023 WL 2960894, at *5 (Bankr. D. Del. Apr. 14, 2023) (holding that trustee must prove due diligence), and Husted v. Taggart (In re ECS Ref., Inc.), 625 B.R. 425, 454 (Bankr. E.D. Cal. 2020) (same), with Tese-Milner v. Lockton Cos. (In re Flywheel Sports Parent, Inc.), Nos. 20-12157, 22-01109, 2023 WL 2245382, at *4 (Bankr. S.D.N.Y. Feb. 27, 2023) (noting that "[o]ther courts have questioned that holding" and collecting cases). And how this language applies to a section 303(b) inquiry, where no actual preference action is commenced -- and no prior diligence is therefore

- 25 -

possible -- appears so far to have gone almost entirely without comment. See HH Tech Corp., 649 B.R. at 373.

This case does not require us to resolve section 547(b)'s effect, if any, on the assignment of burdens of proof in the context of a contested involuntary petition. The Petitioning Creditors preserved their section 547 challenges for at most five of the Involuntary Debtor's fifteen creditors. And the record shows that the placement of the burden of proof on the section 547(c) defenses made no difference for at least two of those creditors, enough to meet the twelve-creditor minimum. See Fed. R. Bankr. P. 9005; Adelson v. Hananel, 652 F.3d 75, 85 (1st Cir. 2011) ("[A]ny error in assigning the burden of proof is harmless unless the court's decision at the end of the trial turned on burden of proof rules rather than on the weight of the evidence in the record." (citation modified)).

Evidence at the hearing, including invoices and witness testimony, established that the first creditor, Comcast, provided internet service to the Involuntary Debtor's offices in Beverly, Massachusetts, and The Woodlands, Texas, for which the Involuntary Debtor made regular payments. See In re HH Tech., 649 B.R. at 375-76. The evidence further established that those payments, which are the allegedly preferential transfers here at issue, see id., were made in the ordinary course of both entities' business and according to ordinary business terms. The ordinary-course

- 26 -

defense would therefore apply.  See 11 U.S.C. § 547(c)(2); see also Hickey v. Nightingale Roofing, Inc., 83 B.R. 180, 183 (D. Mass. 1988) ("[P]ayments made by a debtor . . . for utilities and rent, and other similar operating expenses . . . were intended by Congress to be exempt from recovery as preferences." (quoting In re Bourgeois, 58 B.R. 657, 659 (Bankr. W.D. La. 1986))).  The evidence was similar for a second creditor, National Grid, which provided electricity to the Involuntary Debtor's Beverly office. See In re HH Tech., 649 B.R. at 376-77.  The ordinary-course defense thus would apply to the challenged payments made by the Involuntary Debtor to National Grid as well.  See 11 U.S.C. § 547(c)(1), (2).

Taking National Grid and Comcast together with the three creditors whose qualifications were not challenged and the seven for whom qualification challenges were not pursued by the Petitioning Creditors on appeal, there are at least twelve qualified creditors.  Any error in the bankruptcy court's allocation of the burden of proof for the section 547(c) defenses was therefore harmless.

**IV.**

For the reasons described, the bankruptcy court's judgment is **affirmed**.